The Central Railroad *vs.* Thompson.

---

### The Central Railroad *vs.* Thompson.

1. As the case is returned for a new trial, no opinion is expressed on the evidence.

2. It is the duty of a railroad company so to arrange its station or depot that a passenger who gets off at the depot or place to alight may get off the car without danger; and it is also its duty to furnish

such a way of exit from the depot over its right-of-way that the passenger may go away from the place at which he is invited to get on and off, without danger to life or limb; but it is not its duty to see him safe and secure in his exit from the track and over its right-of-way. The carrier is not bound to insure him a safe exit from the depot, but to insure only a safe way for him to use for an exit.

(*a.*) The charge on this subject was hardly apposite to the case, where the injury did not occur at a depot, but at a point several hundred yards therefrom, where the passenger was induced by the agents of the company to leave the train, or else voluntarily left it without inducement from them.

(*b.*) There is a difference between the ordinary announcement of a station as the train approaches it, so that the passengers may prepare to leave the train when it reaches the station, and the announcement after the train has stopped; in the latter case, it is equivalent to inviting the passengers for that station to leave the train. If the passenger in this case got out without such an announcement, it was his act; if he was deceived by the announcement, it was the company's act, so far as fault is concerned.

(*c.*) The issues in this case as to the fault of the company or the deceased, both in respect to leaving the train and in respect to his not re-embarking, and the respective diligence or negligence of each, both before and after his leaving the train, stated.

(*d.*) The railroad company contracted to give the passenger in this case a safe transportation to the station of his destination, and until it carried him to that regular and safe landing, it was responsible for slight neglect, extraordinary diligence being the measure of its care for him to that place. But though the company may have been negligent, it could defend itself and defeat a recovery of damages by showing that, when the passenger was endangered by its negligence, he could have avoided the consequences of it by the use of ordinary care.

3. Negligence is a question for the jury, and it is error for the judge to charge that if certain facts exist, then there is negligence in the carrier. The only exception to this rule is where the law makes a thing negligence in express terms, as in failing to blow the whistle or ring the bell of a locomotive in approaching a crossing. In such a case, the judge may instruct the jury that the omission is negligence.

4. Although a portion of the charge may have been rather confused or unhappily expressed, yet where its meaning was that, when a railroad company has done all the law requires it to do, it is enough, and it cannot be made liable for unavoidable accident, it was not error.

5. There was no error which will require a new trial in charging to

the effect that the law wisely requires extraordinary diligence on the part of railroads and their employés in transporting passengers, as human life is at stake from steam carriage, and for slight negligence they arc, and ought to be, responsible.

(a.) In a charge to the jury, an encomium upon the law is unnecessary, if not one-sided, in lauding the wisdom of the law which bears on the company, unless a like encomium be passed upon that which imposes care and diligence upon the passenger; but it is not such error as requires a new trial.

(b.) It is not always best, in charging upon the trial of a case, to use the language of a reviewing court in discussing it.

6. The jury is not confined to any procrustean rule in measuring the value of a life. The life-tables are an aid to that end, but age, health, habits, and the money one is making, are also *data* from which a conclusion may be drawn.

7. A passenger is not a trespasser because he walks on the track of his carrier when he sees no train coming.

8. In an action by a widow against a railroad for the homicide of her husband, it was error to charge the jury to calculate the value of the life of the deceased, with the sum or amount of his annual pecuniary value to the plaintiff and the number of years of his life expectancy as a basis, and to omit entirely to submit to the jury the increasing incapacity of the deceased to work at his trade as a carpenter, or the decrease in ability to labor which age might cause. No arbitrary rule can be invoked to calculate such decrease in value, but the jury must approximate it from the facts before them, such as *constitution*, habits, heredity, and such experience of the effects of age on muscle, nerve and endurance as they themselves have had or witnessed in their intercourse with men.

(a.) It would seem to follow that the verdict is too large, as the effect of the decline of strength with age was left out of consideration.

9. In defence to a suit by a widow against a railroad company for the homicide of her husband, a recovery may be defeated if the husband's own negligence caused the injury, or if he could have avoided the consequences of the defendant's negligence by the use of ordinary care.

April 20, 1886.

Railroads. Damages. Negligence. Charge of Court. Life Tables. Trespass. Husband and Wife. Before Judge CARSWELL. Scriven Superior Court. November Adjourned Term, 1885.

To the report contained in the decision, it is necessary

to add only that the following were among the grounds of the motion for a new trial:

(1) to (3.) Because the verdict was contrary to law, evidence and the charge of the court.

(4.) Because the court erred in charging the jury as follows : " The law required of them (defendant) extraordinary diligence in the protection of his person and life, until he had a safe and secure exit from their station at No. 6. He should have been given a safe exit from No. 6."

(The fifth, sixth and eighth grounds rested on substantially the same point.)

(7.) Because the court charged the jury as follows : " They (the defendant) must comply with the obligations which the law and reason impose upon them ; and, after having done so, they cannot be held liable for an injury to a person caused by unavoidable accident or catastrophe, which nothing could prevent ; in other words, which the railroad company could not prevent."

(9.) Because the court charged as follows : " From the moment Moses M. Thompson entered the passenger cars of defendant at Savannah, to be carried to Station No. 6, the company was bound to extraordinary diligence in vouchsafing to him a safe transit to and delivery at the proper depot landing of said station ; and if, by the announcement of any of its officers or employés of No. 6, followed by prompt stopping of the train, passengers got out, unwarned by any of said officers of the company of their mistake, at a point some hundreds of yards below the depot, and Moses M. Thompson with others so got out, and, while threading, or attempting to thread, his way up to the depot, was crushed and killed by another train of cars of said defendant, of the presence of which said other train said Thompson had no knowledge, this state of facts, so found by you, would show negligence, when extraordinary care and diligence were demanded, and entitle the plaintiff to recover for her damages the full proven value of

her husband's life. That is true, gentlemen, and I so charge you."

(10.) Because the court charged as follows : " Second.—If it appears from the evidence that an announcement of No. 6 was made, and the train stopped, it was the duty of passengers bound for that station to get off with all reasonable haste, so as not to needlessly delay the train ; and if you are satisfied that, thus misled, passengers got off at that point, under the impression that they were at the station, and were not warned by the conductor or other employé of the company to the contrary, and no sufficient time was then afforded for them to get back on the train ; and, under the circumstances, Moses M. Thompson had gotten off, and was left to grope his way in the dark and cloudy night to the station, and was then and there killed by the cars of one of the trains of the company, then the company is shown to be negligent and is liable."

(11.) Because the court charged as follows : " Third.—If it appears from the evidence that two freight trains were ahead of the passenger train on that night at No. 6, and one of these had produced the stopping of the passenger train at an unusual place, by being behind time, which facts were known to the conductor and other employés on the passenger train, and it was further known to them that, immediately upon the passage of their train, one or both of these trains would back down on the main track, it was their duty to notify every passenger that had under mistake gotten off of this fact, and a failure to do so was a want of diligence for which defendant would be liable in case of an injury to a passenger thus unnotified. That is true, gentlemen."

(12.) Because the court charged as follows : " Fourth.—The law demanding extraordinary diligence on the part of the railroads and their employés, in cases of transportation of passengers, is laid in wisdom, as human life is at great risk, especially when public carriers employ steam for rapid transit, and extraordinary diligence is required

at their hands. For slight negligence, they are and ought to be responsible. [62 *Ga.*, 567.] This is true and is the law."

(13.) Because the court charged as follows: " Fifth.—In arriving at the amount of damages to be allowed in this case, if they allow any, the jury, to use the language of O. J. Jackson, are not restricted to any procrustean rule in the mode of estimating the value of a life; the age of a man, the health he enjoys, the money he is making by his labor, his habits, are data from which the jury may argue how long he will probably live and work, and what his life is worth to his wife in its pecuniary value. This is true, gentlemen. This is the rule laid down by which you are to estimate the damages, if you find any."

(14.) Because the court charged as follows: " Sixth.— A man is not a trespasser for merely walking on the track ; and certainly he is not, if, at the time he walks on it, it is not known to him that the trains are coming."

(15 ) Because the court, after charging the jury, at the request of the defendant's counsel, as follows: " If you should find from the testimony that the deceased, from his own choice or volition, before reaching the depot, and while the train was stopped, saw proper to leave the car and walk to the depot, instead of remaining on the cars until arriving at the depot, then the railroad company had discharged its whole duty to him as a passenger, and the rule of law requiring extraordinary diligence of defendant as a common carrier of passengers, as far as related to the deceased, no longer applied to his case," added thereto the following: " I give you that in charge, gentlemen, with this qualification, that it was defendant's duty to transport Mr. Thompson safely from Savannah to Station No. 6, and to furnish him with a safe exit from the railroad track. Their duty was to give him a safe crossing over their track and their right-of-way at No. 6. He was entitled to a safe discharge from their track, and a safe crossing over their right-of-way at Station No. 6. If they did

that, then the relation of passenger and common carrier ceased, and they have discharged the obligation of extraordinary diligence required of them by law."

(The sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first and twenty-second grounds are set out in the eighth and ninth divisions of the decision.)

The motion was overruled, and the defendant excepted.

LAWTON & CUNNINGHAM, for plaintiff in error.

HOBBY & MATHEWS; HOOK & MONTGOMERY, for defendant.

JACKSON, Chief Justice.

Mrs. Thompson sued the Central Railroad and Banking Company of Georgia for the homicide of her husband, and recovered a verdict for the sum of $7,500.

The defendant made a motion for a new trial on twenty-two grounds, and assigns error on each of those grounds. They can be grouped together so as to make our task much less laborious than it would be should each be considered separately.

The homicide occurred near Station No. 6 of the Central Railroad, and was caused by the husband of plaintiff leaving the car before it reached the station at a spot some several hundred yards below it, and being run over by the backing of a freight train while he was making his way towards the station. The passenger train on which he was a passenger had stopped because the freight trains were so long as to block its way with some two or three cars. These freight trains were also out of time. The position of the plaintiff is that her husband was induced to leave the car by the announcement of "No. 6—passengers get off!" or words to that effect, by the conductor or officer of the road authorized to make such announcement and give such direction, while the contention of the defendant is that no such announcement was made or direction give by one in

The Central Railroad vs. Thompson.

authority, but he left the car of his own volition, being well acquainted with the station and all its surroundings, and assuming the responsibility of caring for himself. The contention of the plaintiff is, further, that her husband wished to get back on the train, but was prevented by the conductor, who told him not to do so, as it was moving, and thus he was left in darkness; while, on the other side, the company contend that he was warned not to get off by the conductor, and after he did, he was asked to get back by a friend and declined, saying in both cases words to the effect that he could take care of himself. The contention of the plaintiff is that it was the company's negligence thus to leave him in darkness, to thread his way as best he could to the station, even though it was his own carelessness to get off where, and under the circumstances, he did; while to this the company replies that he could have avoided the consequences to himself of that negligence of theirs by ordinary care, familiar as he was with the locality and surroundings, and therefore cannot recover under section 2972 of the Code.

1. These mainly were the issues between the parties, and inasmuch as the case will be remanded for a new trial, we decline to express an opinion on the first three grounds of the motion, which attack the verdict because contrary to evidence, and therefore to law.

2. The 4th, 5th, 6th, 8th, and the qualification of the request in the 15th ground of the motion, make the same allegation of error and may be considered together. They are all to the effect that the judge erred in charging the jury to the effect that the law required the defendant to use extraordinary diligence in protecting the passenger's life and person until he had a safe and secure exit from their station at No. 6, repeating it again and again, with the variations, that he must have a safe and secure exit from their track, and that they must make his exit from No. 6 safe and secure, after he had been discharged from their cars as a passenger, and must furnish him a safe cross-

ing from their track at No. 6, and that they must give him a safe crossing over their track and their right-of-way at No. 6, and that he was entitled to a safe discharge from the track, and a safe crossing over their track and right-of-way at No. 6.

We think these charges were not sufficiently guarded, and were calculated, without modification or explanation, to mislead the jury.

Undoubtedly it is the duty of a railroad company so to fix its station or depot that a passenger, who gets off at the depot or place to alight, may get off the car without danger; and it is also its duty to fix such a way of exit from the depot over its right-of-way that the passenger may go away from the place he is invited to get on and off at without danger to life or limb; but it is not its duty to see him safe and secure in his exit from the track and over its right-of-way. The cars are often gone, with the officers and agents of the company aboard, before the passenger leaves the spot where he was landed at the depot, and who is to use this extraordinary diligence to see him clear over the right-of-way, safe and secure on his route home? Not the conductor, for he is gone. Not the agent at the station, for it is not in the line of his business. Must the company employ some one to accompany him, or watch him as he leaves the depot, and until he is over the right-of-way? We think not.

The obligation of the company is to furnish the way— an easy and safe way out of the car by steps onto the landing at the depot, and a safe road or path thence over its track and right-of-way at the depot, and there its obligation ceases in these respects. The passenger must himself step off on the convenient arrangement for his egress out of the car and over the road prepared for that exit. It is not bound to insure him a safe exit, but to insure him only a safe way for him to use for an exit.

Besides, the charge is hardly apposite to the case. This passenger was not landed at the depot; he was induced

by the agents of the company, or he voluntarily got out without inducement, several hundred yards from the station. That place was not fixed for landing passengers, nor was the company required to fix it for that purpose. Passengers voluntarily getting off there, without some announcement or action of the company's agents, did so at their own venture and risk as passengers; and if an announcement of the agent of the company led the passenger to land there, then it was a want of extraordinary diligence, and more than slight neglect, to cause the passengers, the cars being stopped, to get off at such a place. It is not the ordinary announcement, when the train is approaching a depot or station, and in motion, of "No. 6," so that the passengers may prepare to leave when the train stops at No. 6, but the car is stopped and not in motion at all, and the announcement can mean nothing but "Get out here," and if the agent in charge makes the cry, "No. 6!" it is equivalent to saying, under such circumstances, "We are at the station."

If he got out without such an announcement, it is his act; if deceived by the announcement, it is theirs, so far as fault is concerned—his fault in the first case, theirs in the second.

True, after he is out, if prevented from getting back by the conductor, though he got out without the announcement, it is not diligence towards a passenger, if the place be dangerous, not to take him back, even if necessary to stop the starting train to do so; and true, too, after he gets out on their announcement, or is prevented from getting back, [if] he can avoid the consequence of such conduct by ordinary care in looking out for danger and avoiding it, then, if he does not use such care, he cannot recover.

The case gravitates to that spot—to the acts and omissions to act there of both parties—and it is for the jury to scan all the testimony and see who is to blame there, bearing in mind that the presumption is against the carrier, and that the onus is upon it to rebut that presumption. What caused the stop there of the passenger train; if

the freight trains, were they on time, and why not, if not; what sort of place was it in respect to tracks and culverts; were the tracks close to each other near this switch; was it dark and dangerous to get safely away from this spot; was the freight train backing when it ran over deceased; did it have lights; did others get off at the same place and get to the station safely; did deceased know the spot, and could he have avoided the consequences of his being induced to get off there by ordinary care, or, by reason of drinking or otherwise, was he careless and negligent, and thereby did he fail to extricate himself from the situation; was he induced by the agent of the carrier to land there by an announcement of "No. 6" by such agent, or did · he leave the car without such announcement; after he got off in this place, if dangerous, did he try to return on board, and was he prevented or advised not to do so by the conductor, and was he left there in a dangerous place, and is this slight neglect in the carrier of this passenger to station No. 6, it being bound to extraordinary diligence to transport him to that safe landing, and slight neglect being sufficient to fix liability upon it for not so doing; or did he decline to re mount the car when he could without assistance or with it, if offered, and was he determined to care for himself and brave the danger of the situation when, by ordinary care, in getting aboard again, or by ordinary care, in walking on a track other than that the freight train occupied, or between the two tracks if there was room, he could have avoided the impending danger;—these are the questions for the jury to answer by the proof before them, and fix the negligence where it belongs, if on one side alone; or if on both, then to apportion the amount of damage according to the several negligence of each.

A safe transportation to the station the company contracted to give this passenger, and until it carried him to that regular and customary and safe landing, it was responsible for slight neglect, extraordinary diligence being the measure of its care for him to that place; yet the com-

pany, though negligent far beyond slight neglect, though very far from using extraordinary diligence in its care for this passenger, can defend itself from all damages and defeat any recovery by showing that when he was endangered by their negligence, he could have avoided the consequences of it by ordinary care of himself.

It is our opinion, therefore, that the judge did not sufficiently guard the extent of the duty of the company, in respect to what he said about a safe exit from the depot and the crossing and the right-of-way, inasmuch as the catastrophe occurred, not at the station or the crossing, but at a considerable distance therefrom, at which place it was under no obligation to fix a safe way of exit for its passenger; nor, unless its own announcement and direction had put them out there, or it had declined to re-take him aboard, was it under obligation to afford him help in his exit from that place, if he had with fool-hardiness put himself there and declared he would take care of himself, and declined its assistance; for if he so acted, it is his own recklessness that caused his death.

3. The 9th, 10th and 11th grounds of the charge are erroneous, because they tell the jury what facts make negligence; that is, the judge instructed the jury that, if such and such things appeared from the evidence, or if such and such facts exist, then there was negligence in the company. This court has repeatedly held for many years that negligence is a question for the jury; that what facts make a case of negligence is a conclusion which the jury must reach without aid from the court, and that the court errs if the judge in charging the jury tells them what facts make negligence, and thus reaches a conclusion for them, and instructs them that they must adopt and enforce his conclusion from the facts, so concluding them on an issue the law gives them to try and excluding their own judgment of what is negligence in the case before them.

The only exception to this long line of successive decisions of this court on this point is the case where the statute

law makes a thing negligence in express terms, as in case of failing to blow the whistle or ring the bell when the train approaches a crossing in the country or the city and town respectively. He may tell the jury that this omission is negligence, because the law says it is, and the law he must give in charge.

4. The seventh ground is, " they (the defendant) must comply with the obligations which the law and reason impose upon them ; and having done so, they cannot be held liable for an injury to a person caused by unavoidable accident or catastrophe which nothing could prevent ; in other words, which the railroad company could not prevent." We think it is rather confusedly or unhappily expressed, but it means that when the company has done all the law requires them to do, it is enough, and it cannot be made liable for unavoidable accident. So construing it, we see no error therein.

5. Nor is it error to charge to the effect that the law requires extraordinary diligence on the part of railroads and their employés in transporting passengers, wisely, as human life is at stake from steam carriage, and for slight negligence they are, and ought to be, responsible. In a charge to the jury an encomium upon the wisdom of the law is unnecessary, if not rather one-sided in lauding the wisdom of the law which bears on the company, unless a like encomium were passed upon that which imposes care and diligence also upon the passenger ; but it is hardly error, certainly not such as would require a new trial. The language which the judge used is that of this court in *Crawford vs. The Georgia Railroad*, 62 *Ga*, 566, the substance only being stated above ; but it is not always best to use the language of a reviewing court in a charge to the jury ; if it were done, every charge would run counter to the jurisdiction of juries at *nisi prius* upon what makes negligence.

6. It certainly is not error to tell the jury, as complained of in the 13th ground, to the effect that the jury is not con-

fined to any procrustean rule in measuring the value of a life. Age, health, habits, the money he is making, are all *data* from which the jury may argue his length of life and ability to work, and thus what that life is worth to his wife.

To hold one to tables and nothing else would work great injustice, not only to plaintiffs, but to the carriers; indeed, more to the carriers. The tables prepared for life insurance do not contemplate at all ability to work, and how long that ability will continue, and how much it will decrease as age increases, but those tables only calculate life's duration, however feeble and incapable of labor that life will be in old age. Manifestly the law held by this court, and repeated in this charge, must be right, and ought to be given in charge to the jury; otherwise, gross injustice would often be done to plaintiffs—oftener to defendant carriers.

7. Surely it cannot be the law that a passenger is a trespasser if he walk on the track of his carrier. No man is one for merely walking thereon when no train is coming upon it, but a passenger certainly is not, if at the time he is so walking he sees nothing thereon. There can be no error, therefore, in the charge complained of in the 14th ground.

8. The 16th, 17th, 18th, 20th, 21st and 22d grounds are all allegations of error in the charge as to damages. We are clear that the court erred in some of these charges. They are as follows:

(16.) "With the sum or amount of his (Thompson's) annual pecuniary value to plaintiff, and the number of years of his life expectancy as a basis of calculation, you must calculate and find, in an aggregate sum of dollars and cents, the value of Mr. Thompson's life to plaintiff. This aggregate sum, when so ascertained and fixed by you, is what the plaintiff would have received from the labor and services of her deceased husband through the series of years (fixed and determined by you) which he would probably hav› liv›d had he not been killed, at the annual rate of his life value to her, as ascertained and determined by you.

And she is entitled to recover this sum, reduced and diminished to its present cash value, under the proper rule of discount."

(17.) Because the court erred in not instructing the jury as to the proper mode of ascertaining the present cash value of Thompson's life, the only reference to the same being such as is contained in the above extract from the charge.

(18.) Because the court failed to instruct the jury, after stating to them a rule for estimating the amount of damages, that the amount must be diminished by them, if they found that Thompson had himself been guilty of negligence, in proportion to the amount of negligence contributed by him.

(20.) Because the damages assessed by the jury are excessive.

(21.) Because the court erred in not charging the jury that, in estimating the damages, they should consider the fact that plaintiff's husband, as he grew older, would have been less able to pursue his vocation as a carpenter, and that therefore his earning capacity, if he had lived the eighteen years shown by the tables of mortality, would have been diminished.

(22.) Because the court erred in not calling the attention of the jury to the declining years of the plaintiff's husband, and the apparent decrease, year by year, of his capacity to labor in his business of a carpenter.

The court erred in giving the rule in the 16th ground, without more. In the 21st and 22d grounds of the motion, these omissions are clearly laid down. Assuredly the court should have called the attention of the jury to the increasing incapacity for labor, as a carpenter, of the plaintiff's husband as age grew heavier upon him, and to such decrease of the value of his life to his wife, as such continuing decrease from year to year, when it began, of his ability to work would necessarily cause. To ascertain this decrease exactly is impossible. No arbitrary rule like that

which counsel for plaintiff in error would seem to derive from his 13th ground of error can be invoked to calculate it. The counsel must abandon their fondness for a procrustean rule here, for no mortality table can estimate it with any approach to accuracy. The jury must approximate it from constitution, habits, heredity and such experience of the effect of age on muscle and nerve and endurance as they may have had themselves, or witnessed in their intercourse with men. In respect, therefore, to measuring the value of his life, it must be left to the jury, and no exact mode can be fixed as seems to be desired in the 17th ground. As to the 18th ground, the court elsewhere instructed the jury on the point made therein. It would be well, however, to repeat it in this connection on another trial, as it bears directly on the apportionment of damages in case of contributory negligence, should the jury find such to be the fact here. It would seem to follow that the verdict is too large, as the effect of decline of strength with age was left out, as complained in the 20th ground.

9. The 19th and last ground to be considered is,

(19.) Because the court erred in failing to charge the jury the rule of law set forth in section 2972 of the Code, to-wit: If the plaintiff (in this case plaintiff's husband) by ordinary care could have avoided the consequences to himself, caused by the defendant's negligence, she is not entitled to recover.

The point was decided at this term in the case of *Harris vs. The Central Railroad Company*, *ante*, *501*. This issue is also in this case. The company has the bar to recovery, if the plaintiff's husband's own negligence caused the injury, given in Code, section 3034, which is given to the jury in the case at bar here; but it has also the bar of section 2972, which pre-supposes negligence in the company, the consequences of which, by ordinary care, the deceased could have avoided. There his own negligence alone did not cause it; but the carrier's negligence

v 76-50

put him in jeopardy, in danger of death as its consequence, yet by ordinary care he could have avoided the consequences of the other's negligence and did not. Because when he could, he did not avoid the impending danger by the use of mere ordinary care, he forfeits recovery, and his wife stands in his shoes.

But see the case, *supra*, where the distinction is clearly drawn and illustrated. The court should have given section 2972 in charge.

Judgment reversed.