<hr/>

## EDWARDS *vs.* BLOCK.

1. The verdict was supported, if not demanded, by the evidence.
2. If the owner of a bakery employed a baker for a year, with the condition that the employment was to terminate at the death of the employer, or if his bakery should be destroyed by fire; and if the bakery was destroyed by fire, and thereafter the owner told the baker that he wished him to stay, and to wait a day or two until he could " get straight," and he would find the baker something to do, or make agreeable arrangements with him; and if, in pursuance of such declarations, he sought to get employment for the baker with other persons, and relying on these acts and declarations, the baker refused offers of employment from other parties outside of the city, and remained there in good faith for several weeks waiting for the fulfilment of these declarations, and at the end of five weeks his former employer refused to carry out such declarations or to pay him anything:

*Held,* that such declarations were merely gratuitous, and in no sense related to the contract which had been terminated by the fire. They neither amounted to a waiver of the terms of that contract nor to a new contract.

(*a.*) Had such declarations amounted to a new contract, they were not declared on as such.

3. If there was any error in the charge on the subject of the measure of damages, it did not hurt the plaintiff, as the jury found for the defendant on the plea that the contract had been terminated by the destruction of the bakery by fire.

January 21, 1885.

Contracts.    Waiver.    Master and Servant.    Pleadings. Before Judge HAMMOND.    Fulton Superior Court.    March Term, 1884.

Edwards brought suit against Block to recover $1,300.00, less a credit of $50.00, on a contract for services as a baker.

The declaration alleged, in brief, as follows: Defendant employed plaintiff for a year, beginning January 6, 1882, and ending January 6, 1883, at $25.00 per week. Plaintiff was induced to leave his home in New York and to come to Atlanta to accept this employment, and continued to labor for defendant until January 21, 1882, when the building in which he was employed was destroyed by fire. Defendant paid him up to the date of the fire, and at the same time told him that he would need his services as soon as he could "get things straightened out" from the fire, and requested him to hold himself in readiness to resume his work as soon as defendant could prepare therefor, which would be in a very short time. Relying on this, and with the knowledge and consent and at the instance and request of the defendant, the plaintiff refused to correspond with Messrs. Braun & Company and others as to terms on which he would enter their employment; and he sought employment in Atlanta at a less sum than plaintiff was paying him, it being understood that whatever sum he could earn weekly by such temporary employment should be deducted from the amount for which defendant was liable under the contract. On February 26, defendant refused to comply with the contract and discharged plaintiff.

There was a second count in the declaration, based on an open account for an amount alleged to be due by defendant to plaintiff for services as baker.

Defendant pleaded the general issue and a special plea that, by the terms of the contract between him and the plaintiff, the employment of the latter was to cease in the event of the death of defendant or the burning of the house in which he was doing business; that this house was burned on January 21, 1882, and the contract was terminated.

The evidence was conflicting. The plaintiff testified to the contract, as declared on by him, the fire and the payment of his wages up to that time. As to

subsequent conversations, he testified as follows:   After the fire, he received letters and a telegram offering him situations.   He went to the defendant, and told him that he thought he was in a position to relieve him of his obligation, if the latter was willing; defendant said he wished him to stay.   Plaintiff sympathized with defendant, and told him that he was willing to share his losses by accepting a reduction of wages until defendant's place was rebuilt; defendant told him to wait a day or two until the former could " get straight," and then he would find plaintiff something to do or make some agreeable arrangement with him, and asked if plaintiff was willing to work for one Jack as a baker; plaintiff replied that he was, and defendant said he would apply to Jack.   Plaintiff did not seek for employment in Atlanta, but, with the knowledge of defendant, applied to some friends outside of the city to find employment until defendant should resume the business of cracker-baking.   Five weeks after the fire, the plaintiff went to the defendant and told him that he was tired of the uncertainty, and requested defendant to pay him up to that date and discharge him.   Defendant said he had already discharged himself after the date of the fire, and claimed that such a fire would release him from a contract for employment.   He refused to pay plaintiff anything, and the latter left.

Defendant and a witness in his behalf testified that the contract of service was conditioned to terminate in case of the death of defendant or the burning of his place of business.   Defendant denied the testimony of plaintiff as to the transactions subsequent to the fire, and his evidence, and that of other witnesses in his behalf, was to the effect that, after the fire, it was conceded in conversation that the contract of service was terminated; that defendant told plaintiff that he would employ him again in the fall, when he resumed his business; that the plaintiff came to him with the request that he write for him and endeavor to get him a situation, which was done; that defendant

also saw Jack several times with a view to obtaining a situation for plaintiff; that Jack finally agreed to give him a situation, but he said he had made arrangements to leave, and would not work again either for defendant or Jack. In regard to the telegram offering the plaintiff a situation in San Francisco, defendant testified that plaintiff stated that he did not desire to go there; also that, in what he did, he considered himself as acting for the plaintiff's benefit, and not for his own, and that he had learned that plaintiff did go out of the city, but subsequently returned and took employment for a time.

The jury found for the defendant on his second plea. Plaintiff moved for a new trial, on various grounds, the only material ones of which are stated in the decision. The motion was overruled, and plaintiff excepted.

Geo. S. Thomas; T. P. Westmoreland, for plaintiff in error.

Mynatt & Howell, for defendant.

Blandford, Justice.

1. This was a motion for new trial, which the court refused, and this refusal is excepted to. As to the general grounds in the motion, the verdict was almost, if not, demanded by the evidence. The law approves it, the court below did approve it, and we approve his ruling in this respect.

2. The first ground insisted on by the able counsel for plaintiff in error is, that the court refused to charge the jury, " that if they should be satisfied from the evidence that the original contract had, as claimed by defendant, a condition that the employment by defendant of plaintiff was to terminate at the death of defendant, or if his bakery was destroyed by fire; that after defendant's bakery was destroyed by fire, defendant told plaintiff he wished him to stay, and to wait a day or two until he got straight, and he

would find plaintiff something to do or make agreeable arrangements with plaintiff; and if, in pursuance of said declaration, defendant did proceed to endeavor to get employment for plaintiff with G. W. Jack and others, and if plaintiff, relying on these acts and declarations of defendant, refused offers of employment with James Dunn & Co., of San Francisco, and with other parties outside of Atlanta, in good faith remained in Atlanta several weeks, waiting on defendant to carry out his declarations, and at the expiration of five weeks after the fire, defendant refused to carry out his declarations or to pay plaintiff anything, this in law was a waiver of the condition in the contract that the same should terminate at defendant's death or in case his bakery was destroyed by fire," etc.

The court did right to refuse this request. To have given it would have been manifest error. Under the contract, as proved by defendant and his witnesses, the defendant employed plaintiff for one year, which was to terminate by the death of defendant or the destruction of his bakery by fire. The bakery was destroyed by fire. After this the declarations or statements embraced in the request were made by defendant to plaintiff. It is quite clear that such statements were merely gratuitous on the part of defendant, and in no sense related to the contract between the parties, which had been terminated by the fire; nor were the same in any manner a new contract between the parties. If they had amounted to a new contract, the charge was properly refused, because the contract declared on by plaintiff was an entire contract for employment of plaintiff by the defendant for the year, and there were no conditions in it as to death or fire, as pleaded and proved by defendant. So the plaintiff must recover, if at all, upon the contract and breaches thereof, as set out in his declaration, or on his *quantum meruit* count attached thereto.

But we do not think that the facts hypothesized in this request were any waiver of the contract, as contended for by the defendant; nor do such gratuitous declarations of de-

fendant amount to a new contract. They were only friendly offers by the defendant of assistance and help to plaintiff— merely voluntary and without consideration, and do not form the ground of a contract.

3. The next, and only other ground relied on by the plaintiff in error is, that the court erred in charging the jury that, if they found the contract to be as contended for by plaintiff in error, they should reduce the damages by whatever sum plaintiff may have received for work done for other parties during the period sued for, because the pleadings and evidence do not warrant this charge. This charge in nowise hurt the plaintiff, because the jury found for defendant on his second plea, which plea set forth the contract between the parties to be that the same should terminate by the death of defendant or the destruction of his bakery by fire, and that the same was destroyed by fire in January, 1882, and it was admitted that plaintiff had been paid under the contract until the fire. So, in this aspect of the case, whether the charge be correct or not, it could not affect the plaintiff's rights.

Judgment affirmed.

HALL, Justice, concurred, but furnished no written opinion.

JACKSON, Chief Justice, announced that he concurred in the decision, except that he was inclined to the opinion that there was a new contract; but there was no suit on such new contract, and hence there could be no recovery under it.