## BRUNSWICK & WESTERN R. R. CO. v. MOORE.

1. Where the relation of carrier and passenger is once established, unless that relation be terminated by the voluntary act of the passenger, or by the carrier under circumstances which would justify such a course, it continues until the passenger is safely deposited at his point of destination, and until he has left or has had a reasonable time within which to leave the premises of the carrier; and if, during the continuance of this relation, he suffer injury in consequence either of the negligent, wrongful or wanton tort of one of the carrier's servants, the carrier is liable.

2. The requests to charge, so far as legal and applicable to the case as presented by the evidence, were sufficiently covered by the general charge given to the jury, and the charge as a whole fairly submitted the law bearing upon the issues in dispute.

3. The verdict is supported by the evidence, and is not excessive.

Argued June 3, — Decided July 9, 1897.

Action for damages. Before Judge Sweat. Coffee superior court. October term, 1896.

*D. H. Pope*, for plaintiff in error.

ATKINSON, J. The questions made in this case arose upon the following state of facts: Aaron Moore, as next friend of his son William, sued the railroad company, and obtained a verdict for $3,000.00. Defendant made a motion for a new trial, which being overruled, it excepted. The material testimony introduced upon the trial may be stated as follows: William Moore testified, that he was 17 years of age; that he and eight other boys entered defendant's train at Alapaha, and traveled thereon as passengers to Willacoochee, a distance of eleven miles, on the night of February 9, 1896. The train stopped at Willacoochee not more than four or five seconds, just long enough for Moore to leave it. He had just reached the ground and taken two steps when a shot from a pistol, fired by the conductor of the train, struck him in the leg. The ball broke and went on both sides of the bone; one piece had to be cut out in one place, and the other in another place. He suffered great pain from the wound, was confined to bed for a week, after which he went around on crutches and with a stick; and about a month afterwards, had to have another piece of the ball cut out which had not been found at first. He denied that he applied to the conductor the opprobrious

epithet testified to by the conductor, or that he, plaintiff, had anything in his hand. The conductor testified that, after making the usual stop at Willacoochee, he gave the signal for the train to go ahead, and it had gone about a car length and a half when he heard some one say, "You damned old white-headed son of a bitch." He leaned out and saw a man running along by the side of the train, and it looked like he had something in his right hand. He said, "It is you I am talking to, you damned white-headed son of a bitch," and the conductor shot him. He was running along by the side of the coach. The conductor could not recognize this boy, but he could see it was a white man, and that was all. Plaintiff testified that he did not run along by the side of the train and curse the conductor, that the train was moving along when the shot was fired at him. The defendant introduced and examined several witnesses who had been summoned by the plaintiff, and separated at defendant's request. In some particulars their testimony tended to support Moore, and in others the conductor.

It was alleged that the court erred in charging the jury as follows: "Or if you find that after arriving at his point of destination, and alighting from the train, and having a reasonable time to make his exit from the premises of the defendant company, and while the train was moving off, or in the act of leaving, that he followed after it, pursued it, that there was some trouble existing, that a reasonable time for William L. Moore to have made his exit from the premises of the company had been allowed, which he had not done, but pursued and followed after the train, that whatever trouble may have occurred at such a time as that, then, under the rules the court has charged you, the relations and duties existing between the conductor and the passenger would have ceased, and if the conductor then shot Wm. L. Moore, wounding and injuring him, the court charges you that if you should find that to be the truth of this matter, then, in that event, the plaintiff would not be entitled to recover damages from the defendant railroad company." Error is assigned upon this charge, in that it impresses on the minds of the jury that, at all hazards and under

all circumstances, the plaintiff must have had time to have made his exit, not only from the train, but from the premises of the defendant, regardless of the condition of the plaintiff, before the liability of the defendant as a carrier of passengers ceases. There were certain requests to charge, which were fully covered by the principle announced in the charge given; and if the rule of law be well stated in the instruction excepted to, there is no reason for the consideration of the proposition contained in the requests.

It will be seen, from an examination of the evidence, that the plaintiff was accepted by the defendant as a passenger, and as such he travelled from the initial point of his journey to the point of destination he had in contemplation at the time he entered the company's cars. If he was a passenger at the time the injuries were inflicted upon him, for which he brings this action, he was entitled to recover; for he was entitled, by virtue of his contract of passenger carriage, not only to be protected against the consequences of the negligent acts of the company's agents, resulting from the omission to perform its duties toward the passenger, but he is likewise entitled to be protected against the wanton and wilful acts of violence wrongfully committed upon his person by the servants of the company during the continuance of the relation instituted by his contract with the company. Whether or not he was a passenger at the time the injuries were inflicted upon him, depends upon whether at that time it had completed its contract of carriage with him, and, in the legal sense, delivered him at the point of destination. There was no voluntary abandonment by this passenger of his right safely to be delivered at the point of destination in accordance with the contract under which he entered the company's cars. Its servants did not, for any improper conduct upon his part, seek to expel him from the car, and thus terminate the relation of carrier and passenger; so that the relation of carrier and passenger, having commenced, continued until the carrier had fully performed its contract of carriage. It does not satisfy the requirements of this contract that the passenger should have been safely transported to the point at which he was expected to,

and did, leave the car of the company. Until he had actually left, or had had a reasonable time within which to leave the premises of the company at the point of destination, he was still a passenger, and entitled, as against the company, to all the rights and immunities of a passenger. This was the rule laid down by the court in its instruction to the jury. It was the correct rule; and consequently this instruction afforded no ground for the grant of a new trial. 2 Am. & Eng. Enc. L. 745, and cases there cited. 4 Elliott on Railroads, §1592.

Whether or not the plaintiff's version of this transaction was true was a question of fact for the jury. They believed it, returned a verdict in his favor, and the trial judge has approved their finding. It is amply supported by the evidence. In view of the circumstances under which the injury occurred, the nature of the wounds inflicted, it was not excessive; and this court will not control the discretion of the trial judge in refusing to grant a new trial.

*Judgment affirmed. All the Justices concurring.*