*George B. Rush* and *Mayson & Hill,* for plaintiff in error.
*Edgar Latham,* contra.

---

McBRIDE *v.* GEORGIA RAILWAY AND ELECTRIC CO.

1. Where the jury found that the plaintiff was not entitled to recover any amount as damages, the rejection from evidence of tables of life-expectancy, and a charge on the subject of the measure of recovery for diminished capacity to earn money on the part of a woman who married after the injury, will not require a reversal, whether erroneous or not, unless it appears that such rulings were in some way calculated to affect the finding of the jury on the question of liability or non-liability.

2. The allowance of questions somewhat leading in form is a matter within the discretion of the presiding judge, and it will not be controlled unless abused.

3. If a person who claimed to have been injured while alighting from a railroad car, in answer to a question by an employee of the company as to how it occurred, made an admission tending to show that the injury resulted from the accidental slipping of her foot in getting off the car while it was standing still, and not from any negligence on the part of the company's employees; and if such statement was freely and voluntarily made, and did not appear to be an admission or proposition made with a view to a compromise, it was admissible in evidence, although after making it she proposed to the agent of the company that a compromise be made.

4. The mere fact that admissions of a party to a suit may have been proved, and that they do not accord with the testimony given by him as a witness examined by interrogatories, does not render evidence admissible for the purpose of showing that he had previously made to another witness statements consistent with his testimony.

5. Where a young woman nineteen or twenty years of age claimed to have been injured by the sudden jerking of an electric car of a street and suburban railway while she was in the act of alighting, throwing her against the side of the car, and she testified that after this she walked into the station and sat down for a few minutes, and then walked to her destination, which was a house two or three hundred yards distant; and where the evidence showed that upon arriving there she was observed to look pale and to be trembling, and was asked what was the matter, and made a statement as to the manner in which she claimed to have been injured, such statement constituted no part of the res gestæ and was properly excluded.

6. There was no error in charging that it was the duty of the jury to scan admissions, if proved, with care, but, that, so scanning them, the jury should give them such weight as they thought such admissions entitled to.

7. While the charge of the court touching the continuance and termination of the relation of passenger and carrier between the parties may not have included all possible cases, either as to the commencement of such relation or its termination, yet, as applied to the facts of the case on trial, there was no error in charging that if the plaintiff boarded one of the cars of the defendant and paid her fare, under the law she became a passenger of the defendant, and the relation of passenger would exist from the time she boarded the car until she had reached the place of her destination and had been allowed a reasonable time and opportunity to alight from the car in safety; and that, during the continuance of such relation, the law imposed upon the company the duty of exercising for the protection of her person extraordinary care.

8. That a plaintiff testified by answers to interrogatories, and was not present at the trial, and that she was surprised by the fact that the defendant introduced evidence to show an admission on her part, furnishes no ground for a new trial.

9. None of the other rulings complained of are such as to necessitate a reversal.

Submitted March 3,—Decided May 16, 1906.

Action for damages. Before Judge Reid. City court of Atlanta. July 4, 1905.

Miss Phelps (who, pending the action, by marriage became Mrs. McBride) brought suit to recover damages for a personal injury. She alleged, that she boarded a car of the defendant in Atlanta, and paid her fare to a suburban station; that upon arrival at the station she prepared to alight in the usual way; that while she was in the act of alighting the motorman suddenly turned on the current of electricity, causing the car to jerk, throwing her against the side of the car and causing injury to her. By amendment it was alleged, that when the conductor announced the station the car stopped just above it, but practically at it, being the usual place for stopping at that station, on account of a down-grade just before reaching it; but the point of stopping was so near that plaintiff knew it was the proper place for her to leave the car. The defendant denied the substantial allegations of the declaration. The jury found for the defendant. The plaintiff moved for a new trial. The motion was overruled, and she excepted.

*J. F. Golightly,* for plaintiff.

*Rosser & Brandon* and *W. T. Colquitt,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. Mortality tables are not admitted in evidence for the purpose of showing that the plaintiff was hurt, or that the defendant is liable, but as an aid to the jury in estimating the probable dura-

tion of the injury if it is shown to be permanent, and calculating the amount of damages if there be a recovery. Where the jury has found that the defendant is not liable at all, a ruling as to the method of estimating the amount of damages, if the plaintiff is entitled to recover for a permanent injury, will not require a new trial, even if erroneous. *Edwards* v. *Block,* 73 *Ga.* 450(3).

2. If the questions which the court allowed to be asked a witness and which were complained of as leading were in fact so, the court had a discretion on that subject. Civil Code, §5283, and cit.

3. Admissions or propositions made with a view to compromise are not admissible. But where a party makes admissions without regard to a compromise, and when it does not appear that any compromise or proposition to compromise is in view, the fact that she may afterwards propose that the parties compromise will not have a retroactive effect so as to prevent her independent admissions from being proved against her. *Akers* v. *Kirke,* 91 *Ga.* 590(3); *Cooper* v. *Jones,* 79 *Ga.* 379; *Hatcher* v. *Bowen,* 74 *Ga.* 840(*c*); *Teasley* v. *Bradley,* 110 *Ga.* 498(6).

4-6. The narrative statement of the plaintiff in regard to the manner in which she was injured, made some minutes after the transaction was over, and after she had walked from the place where it occurred to her intended destination, two or three hundred yards away, was no part of the res gestæ, and was properly excluded. *Augusta & Summerville R. Co.* v. *Randall,* 79 *Ga.* 304(3); *Newsom* v. *Georgia Railroad,* 66 *Ga.* 57; *White* v. *Southern Ry. Co.,* 123 *Ga.* 353(3), 358, and cit.; *Poole* v. *East Tenn., Va. & Ga. Ry. Co.,* 92 *Ga.* 337; *Western & Atlantic R. Co.* v. *Beason,* 112 *Ga.* 553; *Weinkle* v. *Brunswick R. Co.,* 107 *Ga.* 367. Nor did such statement become admissible because evidence was introduced to show that the plaintiff had made an admission at another time and to another witness, as to the manner in which she was injured. Even where it is sought to impeach a witness by evidence of contradictory statements, the general rule is that such witness can not be supported or corroborated by proof that he had made elsewhere other statements consistent with his testimony on the stand. *Cook* v. *State,* 124 *Ga.* 653, and cit. This case is not one of those exceptional ones referred to in *McCord* v. *State,* 83 *Ga.* 521, and *Sweeney* v. *Sweeney,* 121 *Ga.* 293. Here the evidence was not offered for the purpose of impeachment; and even if it had been, the

motive imputed to her to talk in her own favor existed as well when the statements were made as when her testimony was given. If the rule contended for by the plaintiff in error were adopted, every plaintiff against whom an admission was proved could reply by showing statements previously made in his own favor ad libitum. The charge on the subject of admissions furnished no ground for a new trial. *Raleigh R. Co.* v. *Allen,* 106 *Ga.* 572; *Phœnix Insurance Co.* v. *Gray,* 113 *Ga.* 424.

7. The charge in respect to the commencement and termination of the relation of passenger and carrier may not have been an exhaustive statement of all possible cases on that subject. Thus, in *Central R. Co.* v. *Perry,* 58 *Ga.* 461, it was held, that "One who has a railroad ticket, and is present to take the train at the ordinary point of departure, is a passenger, though he has not entered the cars. In duties toward him, directly involving his safety, the company is bound to extraordinary diligence, and in those touching his convenience or accommodation, to ordinary diligence." In *Brunswick R. Co.* v. *Moore,* 101 *Ga.* 684, the rule was stated to be that "Where the relation of carrier and passenger is once established, unless that relation be terminated by the voluntary act of the passenger, or by the carrier under circumstances which would justify such a course, it continues until the passenger is safely deposited at his point of destination, and until he has left or has had a reasonable time within which to leave the premises of the carrier." In *Central Railroad* v. *Whitehead,* 74 *Ga.* 441, a majority of the court approved a charge that the "duty did not end until the plaintiff was safely landed on the ground at McBean" (the point of destination). In delivering the opinion Chief Justice Jackson said: "The liability of the carrier begins when the train starts and ends only when the passenger lands safely. If the train stops long enough for him to get off, and keep still, then the company's servants have done all they could, and the fault is the passenger's; but if jerks, sudden jerks, while he is getting off, injure him, he having not time to get off safely—reasonable time, then the servants of the company have not exercised all reasonable and ordinary care due to everybody, and certainly not that extraordinary care and diligence due to a passenger." In *Atlanta Consolidated Street Ry. Co.* v. *Bates,* 103 *Ga.* 333, the language of the first headnote is very similar to that employed by the judge in his charge in this case. The de-

fendant there excepted to it as too broad. In the opinion Mr. Justice Lewis said: "There is some apparent conflict in the authorities as to whether the relation of common carrier and passenger exists after the passenger has alighted from the car and before he has had opportunity of passing over and beyond a parallel track of the company's line; but certainly the relation exists while the passenger is in the act of alighting." In *Daniels* v. *Western & Atlantic R. Co.,* 96 *Ga.* 786, it is said: "It is the duty of a railway company to carry its passengers safely to their destination, stop a sufficient length of time to allow them to leave the train in safety, and provide a suitable place for their so doing." See also, on this subject, *Central Railroad* v. *Thompson,* 76 *Ga.* 770, 771; 4 Elliott on Railroads, §1592; 5 Am. & Eng. Enc. Law (2d ed), 497, 498; Fetter on Carriers of Passengers, §§231, 233; 6 Cyc. 541; *Nunn* v. *Georgia Railroad,* 71 *Ga.* 710; *Covington* v. *Western & Atlantic R. Co.,* 81 *Ga.* 273; *Southern Ry. Co.* v. *Reeves,* 116 *Ga.* 743.

It will be observed that the language employed in the decisions cited varies somewhat. But what is said in reference to a case must be considered in the light of the facts of that case. Thus, one case involved the question of the commencement of the relation of passenger and carrier before actual entry into the car; another involved the question of allowing a passenger ample opportunity to alight; another included the question whether a person who had actually alighted from the car upon the ground, but had not had a reasonable opportunity to leave the premises, was still embraced within the meaning of the term "passenger." It was not intended in each case to state an absolutely comprehensive rule including all possible instances. The presiding judge was charging in the light of the issues made in this case and the evidence introduced; and thus viewing the charge to which exception was taken, and considering it in connection with the entire charge, we do not think it was subject to the criticism made upon it.

8, 9. Without discussing each of the other grounds of the motion for a new trial, suffice it to say that we do not think that any of them require a new trial.

*Judgment affirmed. All the Justices concur.*