1005.  TUTEN v. ATLANTIC COAST LINE RAILROAD CO.

1. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal."

2. At common law contributory negligence on the part of the plaintiff in an action based on negligence is an absolute bar to his recovery; and, in suits for personal injuries received in a State in which the common law prevails, if the plaintiff by some negligence directly contributed to the injury sustained, he can not recover, even though it appear that the defendant also was negligent.

Action for damages, from city court of Savannah—Judge Freeman.  January 15, 1908.

Argued March 13,—Decided May 18, 1908.

*Oliver & Oliver,* for plaintiff.

*Garrard & Meldrim,* for defendant.

POWELL, J.  For personal injuries sustained at Port Tampa City, Florida, Mrs. Tuten brought suit in the city court of Savannah, alleging in her petition that the common law prevails in Florida with respect to torts of this character.  To the judgment of the trial court in awarding a nonsuit, she excepts.  The plaintiff herself was the only witness introduced as to how the injury happened.  According to her narrative, she boarded a train of the Atlantic Coast Line Railroad Company in Savannah, Georgia, on July 2, 1907, for Port Tampa City, Florida, and reached her destination at about five minutes after seven o'clock at night.  She was helped from the train on to the station platform by the conductor, and immediately, to use her own words, "went into the waiting-room and spoke to a young man in there.  I asked him if he could show me to my son, Mr. Weldon Tuten's house; he said, 'No ma'am, I know him, but don't know where he lives; I am a stranger here, been here only two or three days.'  Besides this man, there was a little girl in there.  This light I saw in the waiting-room; I did not see any other light around there—not a one.  I got to the waiting-room from the platform.  The conductor took me right off at the platform, and put me on the platform; the premises looked all right, as far as I could see; I never saw it in the daytime; I have been there twice in the nighttime."  The plaintiff remained in the waiting-room about ten minutes, until, after the train had pulled off, leaving the platform, as she said,

in total darkness (though to us this statement seems strange, considering the time of day named), she went out on the platform, where it was so dark she "could not see her hand before her," in an endeavor to find the steps leading to the street. While going along on the platform, sliding her feet before her, she came to a place which she says, "I thought was steps, and I eased one foot down to feel for the steps, and that is the last I remember." On cross-examination she said: "I reckon I told Dr. Munch that I was walking down the platform to go to my son's house, that I had been there before and thought I could find it, and that I fell off the platform. I don't remember that I did. As I tell you, I was knocked senseless. . . I fell through a platform, where there was a place that I thought was steps; I was hunting steps; there was a place cut in the platform for an ice box to set on, and I thought it was steps. That is the best of my testimony,— that I felt for the steps and could not find them, and fell down; I don't know that I fell off the platform; I know I was feeling around with my feet, and came to a place where I thought was steps, and I suppose it was cut there for an ice box."

1. In her petition the plaintiff alleged that she fell through an unprotected hole or opening in the platform; and her counsel argue that her testimony sustains this allegation of the petition. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal." *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (39 S. E. 294) ; *Steele* v. *Central Ry. Co.,* 123 *Ga.* 237 (51 S. E. 438). "If a plaintiff fails to establish the material allegations of his petition, or if his testimony is contradictory and uncertain as to such allegations, the court, on motion to nonsuit, should construe the evidence most strongly against him." *Ray* v. *Green,* 113 *Ga.* 920 (39 S. E. 470). In the light of this cardinal rule of construction, it is obvious that the plaintiff's testimony in the present case will not authorize the inference that she fell through an unprotected hole in the platform; nor indeed that she had personal knowledge that any such hole actually existed therein. The view of her testimony which the rule above mentioned forces us to accept is that while groping around in total darkness, on a platform with which she was unfamiliar, feeling her way by sliding her feet before her, she came to a place which she thought

was steps. She then eased one foot down, and thus lost her balance and fell. She was knocked senseless by the fall, and in the nature of things could not know whether she had fallen over the edge of the platform or in some other way. That she fell through an unprotected hole in the platform was a mere supposition on her part.

2. The theory of counsel for the plaintiff in error is that at the time of the injury Mrs. Tuten was still a passenger, and that therefore the railway company owed her the duty of keeping its station facilities in a reasonably safe condition for ingress and egress. It is then argued that a breach of this duty in not having the platform properly lighted was the cause of the plaintiff's injury. It is undoubtedly true that the relation of carrier and passenger continues until the passenger has reached his destination and has had a reasonable time to leave the premises of the railroad company. *B. & W. R. Co.* v. *Moore,* 101 *Ga.* 684 (28 S. E. 1000); 5 Am. & Eng. Enc. Law (2d ed.), 497, 499; Glenn v. L. E. etc. R. Co., 165 Ind. 659 (75 N. E. 282, 2 L. R. A. (N.S.) 874, and note). So, too, as long as the passenger relation continues, the carrier is under the legal duty of maintaining its premises in a reasonably safe condition for the uses to which they are adapted. *Central R. Co.* v. *Thompson,* 76 *Ga.* 778; *So. Ry. Co.* v. *Reaves,* 116 *Ga.* 743 (42 S. E. 1015). But we deem it unnecessary to decide in this case whether at the time of the injury the relation of passenger and carrier had been terminated, or whether the carrier had failed in its duty to properly light its premises. It may be assumed, in favor of the plaintiff, both that she was at the time of the injury a passenger and that the carrier was negligent in the matter of not having the premises sufficiently lighted; and still the plaintiff has failed to make out her cause of action.

In cases of this character based on the law of Georgia as embodied in the Civil Code, §§2322, 3830, where both the plaintiff and the defendant have been guilty of negligence, the plaintiff may recover, but the damages should be diminished by the jury in proportion to the amount of default attributable to him. This principle of comparative negligence and consequent apportionment of damages was adopted from admiralty law, and was not known at common law. Burdick on Torts, 430; *Macon & Western R. Co.* v. *Johnson,* 38 *Ga.* 409, 433; Ala. Ry. Co. v. Coggins, 88 Fed. 455 (3), 460 (32 C. C. A. 1). At common law the rule as to the

plaintiff was more exacting; if his negligence had materially contributed to the injury, his cause of action was absolutely barred, irrespective of whether the defendant also had been negligent. 7 Am. & Eng. Enc. Law (2d ed.), 371; *Macon R. Co.* v. *Johnson,* supra; Martin *v.* Great Northern Ry. Co., 81 Eng. Com. Law Rep. 177, 192; Radly *v.* London Ry. Co., 46 L. J. Ex. (N.S.) 573. This long-recognized common-law principle is well stated by Lord Esher in the recent case of Thomas *v.* Quatermaine, L. R. 18 Q. B. 685, 688, 56 L. J. Q. B. 340, as follows: "In an action for injuries arising from negligence, it always was a defense that the plaintiff had failed to show that, as between him and the defendant, the injury had happened solely by the defendant's negligence. If the plaintiff, by some negligence on his part, directly contributed to the injury, it was caused by the joint negligence of both, and no longer by the sole negligence of the defendant; and that formed a defense." In the case at bar the injury occurred in the State of Florida; and in her declaration the plaintiff pleads that the principles of the common law prevail there with respect to torts of this character. At the trial no proof was made of that law or of any other law being of force there. The allegation of the plaintiff's petition is an admission by her that the common law is of force in Florida, and the case will be disposed of upon that hypothesis; and what course this court would pursue in the absence of any such admission is not involved.

As already stated, under the common law the plaintiff can not recover if her own negligence was a material contributing cause to the injury which she sustained. It should be borne in mind, in determining this question, that the conduct of the plaintiff is to be compared to the conduct of a person of ordinary intelligence and prudence similarly circumstanced. Thus judged, it seems plain that the plaintiff's own testimony shows that she was guilty of contributory negligence. She arrived at Port Tampa City after nightfall, and went into the waiting-room where there was a lighted lantern sitting on a table; and, after asking some one if he knew where her son lived and receiving a negative reply, she walked out upon the platform, without taking any precautionary measures, although she says it was so dark she could not see her hand before her, and although she was unfamiliar with the station premises, never having been there in the daytime. It does not appear how

many doors there were leading from the waiting-room, or what door the plaintiff went out of when she left it to go upon the platform. In view of the darkness of the night, her unfamiliarity with the premises, her lack of knowledge as to the location of the steps, her knowledge of the danger involved in the attempt, as shown by her conduct in sliding her feet before her to find the steps, it was incumbent upon her to do one of two things before unnecessarily exposing herself to the dangerous condition which she saw and appreciated; she should have requested the agent, or the other person present, to show her the proper exit from the building to the street, or else have taken the lantern which she says was on the table in the waiting-room, and located the steps. Negligence, unless palpable, is a jury question, but it seems too plain for dispute that a person of ordinary prudence, similarly circumstanced,—the standard by which she is to be judged,— would certainly have availed himself of some precautionary measure to avoid the consequence of the dangerous condition which the antecedent negligence of the defendant had created, and which was obvious to and appreciated by the plaintiff herself. Instead of doing this, the plaintiff deliberately left a lighted waiting-room and went out on a platform with which she was unfamiliar, and where it was utterly dark, and, while groping around by feeling with her feet, made an error of judgment as to the location of the steps, and by a heedless false step brought the injuries upon herself. She had the last clear chance to avoid the injury and did not avail herself of it. So far as the record discloses, she unnecessarily exposed herself to a known danger merely to save herself from a little inconvenience, and without any necessity for so doing. In the eye of the common law she must be regarded as the author of her own wrong, because "it were infinite for the law to judge of the cause of causes, and their impulsion one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Lord Bacon, Maxims of the Law, Reg. 1. Beginning at the injury and going backward, the plaintiff's own negligent conduct immediately contributed to her misfortune, and the harm which befell her is damnum absque injuria. Nor can the plaintiff's conduct be excused on the ground that she made an error of judgment in trying to escape imminent danger; as where one jumps from a wagon while the team is run-

ning away, or from a train to avoid an imminent collision, or where a car has been derailed and the plaintiff is injured, when he might have escaped, if he had remained where he was. *Georgia R. Co.* v. *Rhodes, 56 Ga.* 645; Mobile R. Co. *v.* Ashcraft, 48 Ala. 15; Turner *v.* Buchanan, 82 Ind. 147 (42 Am. R. 485), and other cases cited in the note to Freer *v.* Cameron, 55 Am. Dec. 663, 675. The reason underlying the doctrine of these cases is that the law will take account of the circumstances surrounding an act; and if those circumstances are such as to produce excitement and interfere with deliberation, the act is to be measured accordingly. It might be regarded as a rash thing to jump from a rapidly moving train even when a collision is imminent, and yet the excitement naturally produced by such an exigency might cause a prudent person to do the very thing which in our calmer moments we judge to be rash. But in the present case no such emergency or necessity for hasty action confronted the plaintiff. She had ample opportunity to deliberate as to the precautionary measures which she should take for her own safety; and if she had taken advantage of the means convenient at hand the accident probably would not have befallen her.

But it has been earnestly argued before us by able counsel that the plaintiff was not guilty of contributory negligence in acting as she did, because she had a right to assume that the railway company had complied with its duty of providing a reasonably safe egress from its premises, and therefore a right to assume that she could use the premises in the exact condition in which she found them,—that is to say, without any lights whatever. The answer to this is that the plaintiff did not show that she was using the usual or ordinary exit; nor did she show that there was not a perfectly safe means of egress provided which she could have used if she had only inquired for it or looked for it.

It is to be noted also that the case at bar is distinguishable from that line of cases which hold that it is not contributory negligence for a person to omit to guard against those dangers which, under the circumstances, he had no reason to suspect. Thus, a customer invited into a store has a right to assume that the floor is free from pitfalls and open hatchways in the ordinary passages, and is not guilty of contributory negligence in failing to look for them, even though he would probably have discovered them if he

had looked. Dush v. Fitzhugh, 2 Lea, 307. But in such a case, if he had actual knowledge or reasonable ground to suspect that the floor contained pitfalls, or if he undertook passage in the dark or in an unusual manner, he would no longer have a right to act upon such an assumption. In this case, the plaintiff had reasonable ground to suspect the very thing which befell her. She ought to have known that a natural and probable consequence of her con- duct in going out upon such a platform at such a time would be that she might walk off the edge. This being true, it is absurd to say that she could assume that no harm would befall her in so doing.

The exhaustive brief of counsel for the plaintiff undoubtedly cites respectable authority which tends to a result contrary to the one we have reached. The cases of Ala. Great So. Ry. Co. v. Ar- nold, 80 Ala. 600 (2 So. 337), and Mo. Pac. Ry. Co. v. Neiswanger, 41 Kan. 621 (21 Pac. 582, 13 Am. St. Rep. 304), are somewhat similar in their facts to the case at bar, and it was there held that the question of contributory negligence was for the jury. If we deemed it necessary, we might be able to distinguish those cases from the present case, on the ground that the evidence there was conflicting and involved, whereas here it is undisputed and brief; but we are content to rest our disapproval of them on the criticism of the United States Circuit Court of Appeals for the eighth circuit in the case of M. K. & T. R. Co. v. Turley, 85 Fed. 369 (29 C. C. A. 196). In speaking of the Neiswanger case, that learned court says: "The exoneration from contributory negli- gence in that case was extreme, and ought not to be extended, lest its application should lead to the practical establishment of the doctrine that a railroad company is to be treated as an absolute insurer of the safety of passengers waiting about its platform, however eccentric and thoughtless in their strolling movements. We prefer the better sustained rule recognized in Forsyth v. Rail- road Co., 103 Mass. 570; Reed v. Railroad Co., 84 Va. 231 (4 S. E. 587); Bennett v. Railway Co., 57 Conn. 422 (18 Atl. 668); Railway Co. v. Hodges (Tex. Civ. App.), 24 S. W. 563; Chewning v. Railway Co. (Ala.), 14 So. 204. These cases support the rule that, although the railway company may be guilty of some negli- gence in not providing sufficient lights or railing about its plat- form, yet when these deficiencies are known or are obvious to the passenger, and notwithstanding he sees fit voluntarily, without in-

vitation from the company, and for his mere convenience, to undertake to pass over the edge of the platform, without knowledge of its elevation, the law will not excuse his negligence." Mo. K. & T. Ry. Co. *v.* Turley, 85 Fed. 369 (29 C. C. A. 196). We are certain that the latter cases are more nearly on all fours with the common-law principle which has been adhered to from time immemorial, except where changed by statute, and which the plaintiff has herself invoked. This principle rests upon the reason, satisfactory to the common law, that every person must take ordinary care of himself under all circumstances or else suffer the consequences. Beach on Contributory Negligence (3d ed.), §§ 10, 11; Butterfield *v.* Forrester, 11 East, 60. There was no error in awarding a nonsuit. *Judgment affirmed.*