# SAVANNAH ELECTRIC COMPANY *v.* McCANTS.

1. The court did not err in overruling a general demurrer to the petition, it appearing that the petitioner's cause of action arose from an assault upon him by the conductor and the motorman. of the defendant company's street-car, upon which he was a passenger, made under such circumstances that the jury would be authorized to find, should the allegations in the petition be supported by evidence, that the assault, though it occurred in the street, was a continuation of an altercation that took place while he was a passenger on the car, and that, upon leaving the car, he was immediately pursued by the conductor and motorman, who assailed him and inflicted upon him severe personal injuries.

2. An averment that the assault alleged in the declaration "was done in the prosecution of the company's business, and said conductor and motorman were acting within the scope of said company's authority," was not open to the criticism, made by special demurrer, that such allegations "are mere conclusions of the pleader, state no facts, are not supported by any allegations of fact." Such an allegation as that demurred to was traversable. It contained a statement of facts which had been amplified by the previous recital of facts and circumstances involved in the case.

. Argued January 7,—Decided May 22, 1908.

Action for damages. Before Judge Cann. Chatham superior court. April 1, 1907.

McCants sued the Savannah Electric Company for damages on account of personal injuries received at the hands of the company's employees. The petition alleged, that the plaintiff boarded one of the cars of the defendant, for the purpose of being transported to the nearest point on the railway line to his home. He paid his fare, requesting the conductor to put him off at Duffy street. The conductor failed to do so. He then requested the conductor to stop the car and put him off at Gordon street. This request the conductor also wilfully disregarded, carrying him beyond this point. Then, for the third time, he requested the conductor to put him off at Charlton street. The conductor did not do this, but passed Charlton street, stopping his car, after passing Charlton street, on. the square between Charlton and Macon streets; and the plaintiff was allowed to leave the car at that time. But before reaching Charlton street, it being manifest that the car would not stop, the plaintiff again requested the conductor to put him off, saying, "I have asked you several times to put me off at Duffy and Gordon streets, and you refused; now please put me off at Charlton." As the car stopped between Charlton and Macon streets, and as the plaintiff was about to leave the car, the conductor said to him, "Don't be so damned impertinent." The plaintiff replied: "I didn't come here for that purpose; please let me get off." After getting off the car where it was then stopped, the plaintiff started to walk back, in order to go home, and had gone but a short distance, when, being attracted by footsteps running swiftly behind him, he turned, saw that the car was stationary, and also saw the conductor and motorman, accompanied by a third party unknown to him, running behind him; and they then and there made violent

and unprovoked assault upon him, inflicting injuries described. At least two of the persons assaulting him were the employees of the defendant company, and they assaulted him without provocation, one of the employees beating him over the head with the controller of the car, the other employee beating him violently by using an iron switch-bar. By amendment it was alleged that the assault "was done in the prosecution of the company's business, and said conductor and motorman were acting within the scope of said company's authority."

The defendant demurred to the petition, on the ground that it set forth no cause of action, and demurred specially to the amendment on the ground that it stated mere conclusions of the pleader, and no facts, and was not supported by any allegation of fact. The demurrers were overruled, and the defendant excepted.

*Osborne & Lawrence,* for plaintiff in error.

*Twiggs, Oliver, Gazan & Oliver,* contra.

BECK, J. (After stating the facts.)

1. While we do not agree with the learned judge who tried this case in the court below, in all of the reasoning by which he reached the conclusion that the general demurrer to the plaintiff's petition should be overruled, we fully agree with him in the conclusion reached. If the passenger alleged to have been assaulted by the employees of the defendant had safely alighted from the car upon which he had been traveling and had reached the street, nothing more appearing, and the continuity of the relation of carrier and passenger had been completely broken, even for a short time, nothing more appearing, the contention of counsel for the plaintiff in error, that the acts upon the part of the company's servants were entirely without the scope of their employment and duties, and were therefore acts for which, even though tortious in themselves, the company was not liable, might have been sound. It is not universally true, however, that simply because a passenger has performed the physical act of alighting from the car and passing from the immediate premises of the company, he loses the right to protection from insult and injury at the hands of the carrier's servants which exists by virtue of the relation of passenger and carrier. The general rule is stated as follows: "The relation of passenger and carrier does not ordinarily terminate until the passenger has alighted  .  .  and left the place where passengers

are discharged." 4 Elliott on Railroads, §1592. A similar rule is stated in the case of *Brunswick & Western R. Co.* v. *Moore,* 101 *Ga.* 684 (28 S. E. 1000), where it is said: "Where the relation of carrier and passenger is once established, unless that relation be terminated by the voluntary act of the passenger, or by the carrier under circumstances which would justify such a course, it continues until the passenger is safely deposited at his point of destination, and until he has left or has had a reasonable time within which to leave the premises of the carrier; and if, during the continuance of this relation, he suffer injury in consequence either of the negligent, wrongful or wanton tort of one of the carrier's servants, the carrier is liable." In the present case, if the allegations in the petition should, on the trial, be supported by evidence, we do not perceive why the jury would not be authorized to find that, while the plaintiff had actually left the car of the defendant company and had gone beyond its premises, before alighting from the car an altercation began between the passenger and the servants of the company, an altercation during which, in response to a perfectly reasonable remark upon the part of the passenger, an insulting and opprobrious remark to the passenger had been made by the conductor. See, in this connection, the case of *Cole* v. *R. Co.,* 102 *Ga.* 474 (31 S. E. 107). Now if, under these circumstances, the employee of the company, under the influence of passion aroused by the altercation and in continuance of the wrong inflicted upon the passenger in the use to him of insulting and opprobrious language, leaps from the car and pursues the passenger a short distance beyond the premises of the company, we do not see why the battery inflicted upon the plaintiff should not be regarded as a part of the wrongful treatment which had been begun as against him while he was still upon the car and while, beyond any question, the relation of passenger and carrier existed between the plaintiff and the defendant. Suppose that, in addition to using the insulting language already referred to, the conductor, impelled by the passion that was provoked by the altercation, had committed a battery upon, or had attempted to strike the passenger, who, before the attempted battery was accomplished, left the car, immediately pursued by the employees, and the latter had continued, until the street was reached, the infliction of blows upon the passenger after he had left the premises of the company; would

not all that was tortiously done to the passenger who had left the car, in the supposed case, be as truly an element of a case against the company as the assault or the assault and battery committed while he was upon the car, or while he was in the act of leaving it? If, in the case supposed, the last acts in the tortious conduct of the employees, because of a continuity between them and the first in the series of tortious acts, would have been a basis for the action against the company, would not a battery which was the result of the altercation between the passenger and the employees of the company, while the relation unquestionably continued, be connected with the first wrongful act, that is the use of insulting language, so that the altercation itself and the assault following, as the consequence of it, constitute one continuous wrong and injury against the party assailed? We do not mean that if, upon the trial of the case, the evidence should make it appear that one of the employees of the company had used insulting language in an altercation with the passenger, and that after the passenger had left the car and the premises of the company the same employees who had engaged in the altercation had attacked and committed an assault and battery upon the other party to the altercation, the jury would be bound to find that the assault and battery was but a continuation of the wrongful conduct begun on the car by use of the insulting language. We only hold that under those circumstances it would be for the jury to say whether there existed, between the battery inflicted and the passion aroused by the altercation, the relation of cause and effect, and whether the altercation and the battery were a part of a continuous wrongful act. In the case of Wise v. Covington & C. St. Ry. Co., 91 Ky. 537 (16 S. W. 351), the plaintiff alleged that the defendant's car-driver abused and insulted him on the car, and pursued him from the car and beat him in the street. The defendant denied this, and averred that the plaintiff abused the driver while on the car and continued the abuse after leaving the car, until the driver beat him, to avenge a personal insult. On the trial of the case there was proof on the part of the plaintiff showing his abuse by the defendant's agent and his leaving the car, and his being pursued by the agent to the street or sidewalk, where he was beaten by the agent as alleged in the petition. There was also evidence supporting the allegation in the defendant's pleadings. The trial judge, in his instructions

to the jury, confined them, in their consideration of the case, to what occurred on the car, and excluded testimony relating to that which took place on the street. In passing upon exceptions to this holding of the trial court, the reviewing court said: "If it [the altercation] began on the car, with the driver in fault by insulting the plaintiff or using obscene language to him, when the plaintiff was not the aggressor, and then immediately pursuing him after he left the car, and beating him, it was but a continuation of the wrong begun on the car, and for which the company would be responsible. In the case of Winnegar's adm'r *v.* Central Passenger Railway Co., reported in 85 Ky. 547 (4 S. W. 237), the general doctrine was recognized that the employer was not responsible when the employee was not acting within the scope of his employment; and [the court] illustrated the rule by saying that 'if the driver of a car for the company should leave the car and beat or abuse one on the sidewalk, the company would not be responsible.' It is plain that such an act could not be said to have been authorized by the company, or that it was done in the course of his employment. The facts for the plaintiff here show no such state of case. If he was compelled or was justified in leaving the car on account of the abuse of the driver, and the driver followed him, continuing the abuse, or for the purpose of beating him, it must all be regarded as one continuous wrong, and the company is as much liable as if the beating took place on its car." Between the case last referred to and the case at bar, it should be noted that there is this marked difference, that there was proof showing that the passenger left the car because of his abuse by the conductor. But we have cited it as showing that the court delivering that decision held, as we do in this case, that the battery committed in the street and which grew out of an altercation that took place upon the car, might be regarded as but a continuation of the wrongful treatment of the passenger that began before he left the car. And in the case of O'Brien *v.* St. Louis Transit Co., the Supreme Court of Missouri held as follows: "A street railway company owes to a passenger the duty of protecting him, while the relation exists, from assault by its employees and strangers. This duty continues during the passage and also while the passenger is alighting, and until the act of alighting has been entirely accomplished. So if a passenger, while in the act of alighting, is as-

saulted by a conductor, who follows him off the car, and kills him in an altercation on the street, the company is liable." (Syllabus in 3 St. Ry. Rep. 498). The mere fact that the employees had actually left the car where their services were required, in order to reach the object of their anger, would not necessarily render the acts done by them when they reached him acts done without the scope of their employment. Whether they would be such or not depends upon whether or not there had been a break of continuity between that which was done while the party assailed was upon the car or premises and the wrong inflicted upon him after the assailed and assailant had gone beyond the premises.

2. An averment that the assault and battery alleged in the declaration "was done in the prosecution of the company's business, and said conductor and motorman were acting within the scope of said company's authority," was not open to the criticism made by special demurrer that such allegations "are mere conclusions of the pleader, state no facts, are not supported by any allegations of fact." Such an allegation as that demurred to was traversable. It contained a statement of facts which had been amplified by the previous recital of facts and circumstances involved in the case.      *Judgment affirmed. All the Justices concur.*