## GEORGIA AND FLORIDA RAILWAY *v.* THIGPEN.

1. Generally it is not a part of the duty of the employees of a railway company in charge of a passenger-train to physically assist passengers to alight therefrom. If special circumstances are relied on to raise such a duty, they should be alleged and proved.

(*a*) In a suit by a female passenger against a railroad company, based on the ground that while she was leaving the train at her destination the conductor signaled the engineer to proceed, a general allegation that the conductor was negligent in not assisting her to alight from the train, and that it was his duty under the law to assist her in leaving the car, without stating any facts which imposed such a duty upon the company in addition to the duty of giving her reasonable time and opportunity to alight, was subject to special demurrer.

(*b*) Except in the particular just named, there was no error in overruling the demurrer to the petition as amended.

2. Where the relation of carrier and passenger is once established between a person on a railroad train and the company, unless terminated by the voluntary act of the passenger, or the act of the carrier, under circumstances justifying its termination, it continues to the end of the journey and until the passenger has had reasonable time and opportunity to depart from the train or car in safety, and after he has left the car, until he has had reasonable time and opportunity within which to leave the premises of the carrier.

(*a*) Upon arrival at the end of the passenger's journey, it is the duty of the carrier to afford to the passenger reasonable time and opportunity to leave the train in safety (omitting reference to the duty as to affording opportunity to leave the premises, as not involved here).

(*b*) The general rule as to the continuation of the relation of carrier and passenger has sometimes been stated by saying that it does not terminate until the passenger has alighted from the train, or has so alighted and left the place where passengers are discharged. But this is to be taken in connection with the rule that ordinarily if the carrier stops its train for a sufficient length of time for the passenger to leave it in safety, and affords him reasonable opportunity for so doing, it will have discharged its duty so far as the departure of the passenger from the train is concerned.

(*c*) Where the pleadings and evidence raised the issue whether a railroad company had complied with its duty in this respect, for the court to charge that a passenger continued to be such until after alighting from the car, and that the company was bound to exercise all extraordinary care and diligence for the protection of the passenger until after alighting, without giving any instruction as to the measure of duty in regard to affording the passenger time and opportunity to leave the train, was calculated to mislead and confuse the jury.

3. Where a woman brought suit against a railroad company, on the ground that she was injured by being thrown from the train while in the act of alighting therefrom, and alleged that she was greatly embarrassed and humiliated by reason of having her person exposed on account of the fall, in the absence of any evidence to support such a contention the judge should not have referred to it in his charge.

DECEMBER 10, 1913.

Action for damages. Before Judge Rawlings. Emanuel superior. court. August 6, 1912.

*F. H. Saffold* and *W. H. Barrett,* for plaintiff in error.

LUMPKIN, J. Mrs. Savannah Thigpen brought suit against the Georgia and Florida Railway, seeking to recover damages on account of a personal injury. A demurrer to the petition as amended was overruled, and exceptions pendente lite were entered of record. The jury found for the plaintiff $750. The defendant moved for a new trial, which was denied, and it excepted.

1. The demurrer was properly overruled, except in one particular. The petition alleged that the conductor of the train was negligent in not properly "looking after" the plaintiff, in not assisting her to alight from the train, and in signaling the engineer to go ahead just as the plaintiff was about to descend from the steps of the car to the ground, "it being his duty under the law to give your petitioner sufficient time to alight from said car and also to assist her in alighting from said car." The demurrer attacked the allegation that it was the duty of the conductor to assist the plaintiff in alighting from the car, and that he was negligent in not doing so. Ordinarily it is no part of the duty of the conductor in charge of a passenger-train to physically assist passengers to alight therefrom. If the circumstances of a particular case are such as to raise that duty, they should be alleged and proved. A mere general allegation that it is the duty of a conductor to assist a female passenger in alighting from a car is subject to special demurrer. *Georgia Railroad & Banking Co.* v. *Rives,* 137 *Ga.* 376 (1), 380 (73 S. E. 645, 38 L. R. A. (N. S.) 564), and authorities cited.

2. The plaintiff alleged that it was the duty of the conductor to give her sufficient time in which to alight from the car, but that he was negligent in failing to comply with such duty, and signaled the engineer to go ahead while she was in the act of alighting, and the train moved off with a sudden jerk. The defendant denied the alleged negligence, but admitted that the train arrived at the point of destination alleged by the plaintiff, and made the usual stop there. Thus the question of whether reasonable time and opportunity were allowed to the plaintiff to leave the train was put in issue by the pleadings. The evidence on behalf of the respective parties was in conflict on that subject. The presiding

judge charged that "when a person becomes a passenger upon a passenger-train in this State, the duty arises upon the part of the railroad company to exercise, from the time the person [starts] until they alight and cease to be a passenger, and the railroad company is bound to exercise all extraordinary diligence and care for the protection of the person of the passenger." At another time he charged that if the plaintiff, after purchasing a ticket, presented herself at the entrance of the cars of the defendant company, "then I charge you that she became a passenger, and was a passenger, so far as the railroad company was concerned, until she alighted from the cars." In no part of his charge did he refer to the question of whether, upon the arrival of the car at the destination of the plaintiff, she had been allowed reasonable time and a reasonable opportunity to leave it. Having repeated two or three times in his charge that the plaintiff, if she took passage, remained a passenger until she alighted, and having given in charge the rule that the defendant owed to its passengers the duty of using extraordinary care for their protection, he left them entirely in the dark as to the duty of the railroad company in regard to affording a passenger reasonable time and opportunity to alight at his destination. Nevertheless it was alleged in the motion for a new trial, which was duly certified, that it was one of the defendant's principal contentions that the train was stopped for an unusual length of time, that the plaintiff was given a reasonable time to alight, and that the defendant did not know that she had not alighted, and had no cause or reason to think so.

It is not necessary in every case involving an injury to a passenger for the presiding judge to give to the jury comprehensive instructions, covering all possible cases, as to when the relation of carrier and passenger begins, how long it continues, and when it ends. If the case involved an injury to a passenger while on the train pending his journey, a discussion of whether the relation of carrier and passenger might arise before he entered the train, or of whether it might continue after he alighted from the train but before he left the premises of the company, would probably be of no benefit to the jury, and in some instances might confuse them. The language of various charges has sometimes been approved, not as an absolute definition of the relation of carrier and passenger, but as dealing with the question involved in the particular case.

*McBride* v. *Georgia Railway & Electric Co.*, 125 *Ga.* 515 (7), 518 (54 S. E. 674). In stating the general rule it is sometimes said that the relation of carrier and passenger does not terminate until the passenger has alighted from the train and left the place where passengers are discharged. Elliott on Railroads, § 1592. In a note to that section it is said: "Of course, there may be cases in which the passenger may cease to be such, by unreasonable delay or refusal to leave; and perhaps a more exact statement of the rule would be that the relation of carrier and passenger does not ordinarily terminate until he has had a reasonable opportunity to safely alight and to leave the place where passengers are discharged." In 6 Cyc. 541, the rule is thus stated: "Where the relation of carrier and passenger is once established, it continues until terminated by the voluntary act of the passenger, or the act of the carrier, under circumstances justifying its termination, and extends to the arrival of the passenger at his destination, and a temporary departure from the train for some good or reasonable cause, without the intent to abandon the transportation, will not end the relation. At the end of the journey the relation of carrier and passenger continues until the passenger has had a reasonable opportunity to depart from the train or car in safety. After the passenger has departed from the car, and has had reasonable time and opportunity to avoid further danger from the operation of the car, or further necessity of relation with the servants of the carrier, he ceases to be a passenger and stands toward the carrier as one of the general public." In 5 Am. & Eng. Enc. Law (2d ed.), 497, the rule is thus stated: "The relation of carrier and passenger having been constituted continues until the journey, expressly or impliedly contracted for, has been concluded, and the passenger has left the carrier's premises; or until a reasonable time has elapsed, after arrival at the point of the passenger's destination, in which to afford him ample opportunity to depart from the carrier's premises, unless the passenger has relinquished his rights as such by some act or misconduct of his own, such as a refusal to pay fare, refusal to produce a ticket, failure to have his ticket stamped, detaching coupons, attempting to use invalid ticket, or refusing to comply with the reasonable rules of the carrier." Whether the one form of expression or the other is used, if a railroad company discharges the duty which it owes to a passenger on its train, it can not be

held liable. In a case involving an issue as to whether reasonable time and opportunity were afforded to a passenger to leave a train, or whether the conductor negligently caused it to proceed before the passenger had time to alight, and while she was in the act of doing so, whereby a jerk resulted and she was thrown from the train, to charge only a part of the rule, by stating that the passenger remained such until she had left the train, without any reference to what was the duty of the company, or what would relieve it from liability in such a case, was calculated to confuse and mislead the jury. In *Central Railroad* v. *Whitehead,* 74 *Ga.* 441, Chief Justice Jackson, expressing the views of the majority of the court, said (p. 453): "The liability of the carrier begins when the train starts, and ends only when the passenger lands safely. If the train stops long enough for him to get off, and keep still, then the company's servants have done all they could, and the fault is the passenger's; but if jerks, sudden jerks, while he is getting off, injure him, he having not time to get off safely—reasonable time, then the servants of the company have not exercised all reasonable and ordinary care due to everybody, and certainly not that extraordinary care and diligence due to a passenger." It will be seen that the Chief Justice, referring to the facts of the case then before the court, adopted the form of expression that the liability of the carrier begins when the train starts and ends only when the passenger lands safely; but he immediately added the statement as to the duty of the carrier in regard to allowing the passenger reasonable time and opportunity to leave the train. See, in this connection, *Nunn* v. *Georgia Railroad,* 71 *Ga.* 710 (51 Am. R. 284); *Central Railroad* v. *Thompson,* 76 *Ga.* 770; *Covington* v. *Western & Atlantic R. Co.,* 81 *Ga.* 273 (3), 275 (6 S. E. 593); *Daniels* v. *Western & Atlantic R. Co.,* 96 *Ga.* 786 (22 S. E. 956); *Brunswick & Western R. Co.* v. *Moore,* 101 *Ga.* 684 (28 S. E. 1000); *Savannah Electric Co.* v. *McCants,* 130 *Ga.* 741, 743, 744 (61 S. E. 713).

Of course, there may be circumstances which modify the general rule, or its application, but, under the evidence in the present case, the question of what was the duty of the defendant in regard to allowing reasonable time and opportunity for a passenger to alight from the train, and whether or not it discharged that duty, was directly involved.

3. The plaintiff alleged that by reason of falling from the car she was caused great humiliation and embarrassment, "she being greatly exposed to the view of the persons above the station." There was no evidence tending to show any exposure of her person or any humiliation or embarrassment beyond that of any person who is thrown to the ground. In stating the contentions of the plaintiff, the court informed the jury that she contended that, "in falling, her clothing was displaced, and she was humiliated." In an action by a woman against a railroad company, a reference to such a contention, unsupported by the evidence, was not accurate. Perhaps this alone might not require a new trial, but on a new trial the presiding judge should omit a statement which might be injurious to the defendant, if the evidence does not warrant it.

*Judgment reversed. All the Justices concur.*