AIKEN administrator, *v.* SOUTHERN RAILWAY CO.

1. While a husband may make with a railway company a contract for the safe carriage of his wife, the law will not imply such a contract from the mere purchase of an ordinary ticket by the husband for the wife. In such a case the law raises an implied contract for safe carriage in favor of the wife only.
2. Construing the petition in the present case most strongly against the pleader, it simply alleged that the husband had purchased an ordinary ticket for the wife, and did not set up that there was any other contract than one which would result from the purchase of such a ticket.

Argued May 11, — Decided May 30, 1903.

Action for breach of contract.    Before Judge Irwin.    City court of Polk county.    November 5, 1902.

*Bunn & Trawick*, for plaintiff.

*Shumate & Maddox* and *Fielder & Ault*, for defendant.

Cobb, J. Aiken, as administrator of King, brought suit against the Southern Railway Company, on January 20, 1902, alleging that King was the husband of Eugenia King, and that on the 15th of September, 1897, King, "desiring to go with his wife and other members of his family to Cedartown, Ga., upon a visit, contracted with the said Southern Railway Company, through its ticket agent at Brunswick, Ga., to be carried, together with his wife, from Brunswick, Ga., to Rockmart, Ga., in said county of Polk, and that his wife and himself should be safely transported by said defendant and landed safely at Rockmart, Georgia, and he purchased from the said defendant, through its said agent at Brunswick, a ticket for himself and a ticket for his wife, and a ticket for the other members of his family, paying for said ticket for his wife, as well as for the others, the usual passenger fare from Brunswick, Ga., to Rockmart, Ga." It was further alleged that "in consideration of said price paid for said ticket for Mrs. Eugenia King by her husband, the defendant undertook and promised to convey her from Brunswick, Ga., to Rockmart, Ga., and to afford her all reasonable and proper opportunities safely to alight from the train." The petition then avers, in substance, that, after purchasing the tickets and making the contract with the defendant, King and his wife and the other members of his family entered the train of the defendant at Brunswick and surrendered their tickets to the conductor; that they were safely conveyed until they reached the town of Rockmart, when Mrs. King received painful and serious injuries as a result of the negligent jerking of the train while she was attempting to alight therefrom. The petition sets forth in detail the circumstances under which she was injured, and the extent of her injuries. The value of her services is set forth, and also various items of expense which her husband incurred by reason of the accident. A general demurrer to the petition was sustained, and the plaintiff excepted.

Where a person makes a contract with a railway company engaged in the business of a common carrier, to be transported from one point to another along its line of road, and he is injured by the

negligence of the carrier, he has two remedies, one an action for a breach of the contract, and the other an action on the case for the wrong ; and he may elect which of the remedies he will pursue. *Patterson* v. *Railway Co.*, 94 *Ga.* 140.   See also Civil Code, § 3811. " Tort is the natural and habitual foundation of the action for the breach of the ordinary contract of carriage, and the declaration will be so construed, unless the facts of the case clearly show that the plaintiff has elected to sue on the contract."   Whittenton Mfg. Co. *v.* Packet Co., 21 Fed. 896.   When the petition in the present case is construed as a whole, we think it sufficiently appears that the purpose of the pleader was to bring an action on the alleged contract of carriage.     So construing it, it is to be determined whether it sets forth a cause of action.   Does it sufficiently appear that the railway company entered into a contract with King for the safe transportation of his wife ?   It is alleged in terms that King contracted with the railway company, but the manner in which the contract was made is also set forth, and from this it is apparent that King made no other contract than one which would arise from the mere purchase of an ordinary ticket for his wife. The question therefore arises whether, when one purchases such a ticket from a railway company for the use of another, and there are no other transactions or negotiations between the purchaser and the company, the contract of carriage is made with the purchaser of the ticket, or with the one who uses the ticket as evidence of a right to passage.   While there has been some difference of opinion as to whether a railroad ticket constitutes a contract, by the great weight of authority " the ordinary ticket is not a contract but is evidence of the right to transportation furnished to the passenger in consequence of a contract to carry, and is intended to enable the passenger to secure transportation, under the rules and regulations of the carrier in performance of such contract."   6 Cyc. 570.    See also 25 Am. & Eng. Enc. L. (1st ed.) 1074; 1 Fetter, Carriers, § 275 ; Quimby *v.* Vanderbilt, 17 N. Y. 306, s. c. 72 Am. Dec. 469 ; McLain's Cas. Car. 57, 222, 663, 682.     In *Boyd* v. *Spencer,* 103. *Ga.* 828, this language was used : " A ticket issued to a passenger by a common carrier does not constitute the contract between the parties, unless made so by express agreement.   It is in the nature of a receipt for the passage-money, and is generally only a token the purpose of which is to enable the carrier to recognize the bearer as

the person entitled to be carried.  Any other system by which the business of the carrier would be equally facilitated would answer the same purpose as the ticket system."    See also *Southern Railway Company* v. *Watson,* 110 *Ga.* 691.    There is nothing alleged in the petition as to the character of the ticket purchased by King for his wife, and it is to be presumed that it was the ordinary ticket indicating the points between which the passenger was to be transported.    When one purchases an ordinary ticket from the ticket agent of a railway company, and there is no other communication between the purchaser and the company than the application to the ticket agent for the ticket, the delivery of the ticket, and the payment of the price, the railway company, by the delivery of the ticket under such circumstances, undertakes to safely transport and carry any person who may enter its cars as a passenger having possession of such ticket.    In the absence of some express agreement to the contrary, this is the undertaking of the company.  If the purchaser himself becomes the passenger, he has a right to rely upon the implied contract of safe transportation.    On the other hand, if he does not become the passenger but delivers the ticket to some one else, either for a valuable consideration or gratuitously, the implied obligation on the part of the railway company to safely transport arises in favor of him who presents himself as a passenger and tenders the ticket as evidence of his right to passage.  In other words, in such a case the contract entered into by the railway company at the time the ticket is delivered is simply a contract safely to transport whoever may present himself as a passenger holding the ticket.    We do not mean to hold that a husband might not make an express contract with a railway company for the safe transportation of his wife ; but it would seem that where such a contract was claimed, it would be incumbent upon the person setting it up to show that the agent with whom it was made had authority to do so.    What we do mean to hold is that the mere purchase of an ordinary ticket by a husband for his wife, even though he pays for it, does not constitute a contract between the purchaser and the company for the safe transportation of the wife, but the implied contract for safe passage which the law raises from the purchase of the ticket is in favor of the wife, and in her behalf alone can an action be maintained for its breach.    Of course, we do not mean to hold that where a railroad company has undertaken to

safely carry a wife, or child, or servant, the husband, or father, or master may not, in an action of tort, recover any damages he sustains on account of injuries received by the wife, child, or servant, in consequence of the negligence of the carrier.   The recovery in such a case is for the injury to the husband, father, or master, on account of the tort, and not for the breach of any implied contract which the law raises in his favor.   The only case called to our attention which seems to be at all in conflict with what is above laid down is the case of Jacksonville Railroad Company *v.* Mitchell (Fla.), 21 L. R. A. 487.   In that case it was held that a husband traveling with his wife, where he purchased tickets for himself and his wife and had his own and her baggage checked to the point of destination, might sue the company in his own name for the loss of the wife's trunk containing her wearing apparel and that of her child.   It seems, though, that this decision was put upon the special ownership which the husband had in the property of his wife which was intrusted to his care, that is, not so much upon the ticket which he had bought for his wife, but upon that which he had purchased for himself.   If the case can not be distinguished upon the ground stated, it seems to us to be manifestly unsound. See, in this connection, 2 Fetter on Carriers, § 644.

*Judgment affirmed.   By five Justices.*