34230.   DELTA AIR LINES INC. *v.* MILLIRONS.

Decided December 5, 1952—Rehearing denied December 19, 1952.

*Harris, Russell, Weaver & Watkins,* for plaintiff in error.

*T. A. Jacobs, Edward F. Taylor, Carlisle & Bootle,* contra.

SUTTON, C. J. S. W. Millirons filed suit against Delta Air Lines Inc., on November 18, 1948, for damages arising from personal injuries sustained by Millirons while going from one of the defendant's airplanes, on which he had been a passenger, to his car, which was in a parking area at the Herbert Smart Airport near Macon. General and special demurrers to the petition were overruled, and the defendant excepted pendente lite. The trial resulted in a verdict in favor of the plaintiff. The defendant's motion for a new trial was overruled. The exception here is to the refusal of a new trial and to the overruling of the defendant's demurrers to the petition.

■ The exception to the lower court's ruling on the demurrers to the petition is neither argued nor insisted upon by the plaintiff in error, and is therefore treated as abandoned.

■ The evidence shows that Millirons, the plaintiff, was a passenger on several connecting air lines in making a trip from Los Angeles, California, to Macon, Georgia. He traveled via Delta Air Lines on the last stage of the trip, from Atlanta to Macon, and arrived at Macon at about 9:30 p.m., on September 23, 1947. It was raining then, and Millirons got off the airplane with his infant grandchild in his arms. Members of his family met him at a fence or barrier by the landing surface. One of them held an umbrella over Millirons and the child as they proceeded from the fence, across an open space, and to their car, which was parked beside the defendant's administration building at the edge of the landing field. Millirons was not familiar with the grounds at the airport. A floodlight near the top and on the front of the defendant's office building was burning to light the way from the field to the building, and this light was in Millirons' eyes as he went to his car, which was parked about seven or eight feet from the side of the building. In front of the building, and three feet in front of the plaintiff's car, there was a concrete wall, about ten inches high, which served to keep automobiles from going onto the landing field. The portion of the wall in front of the car was in the shadow

of the defendant's administration building. As the plaintiff came to the car, he went to his left and the person holding the umbrella went to the right; they intended to enter on opposite sides of the automobile. The plaintiff stumbled on the wall, fell against the front of the car, and thereby sustained the internal injuries for which he sought damages.

While it is argued in support of the general grounds of the motion for a new trial that the plaintiff failed to show actionable negligence on the defendant's part, the jury was authorized to find that the defendant failed to exercise ordinary care to prevent injury to its passengers on the premises which it should have expected them to use in coming from night flights, by maintaining a bright light which passengers leaving the field would face before entering the unlighted parking area across the low concrete wall. The duty of the defendant carrier by air in respect to the maintenance of its premises for the use of arriving or departing passengers is the same as that of any owner or occupier of land to those whom he induces, by express or implied invitation, to enter his premises for lawful purposes, and that duty is to exercise ordinary care in keeping the premises and approaches safe. Code, § 105-401; *Coffer* v. *Bradshaw,* 46 *Ga. App.* 143, 148 (167 S. E. 119). The jury was authorized to find that the defendant's breach of this duty to the plaintiff was the proximate cause of the plaintiff's injury, and the verdict was supported by the evidence.

■ In the first special ground of the motion for a new trial, error is assigned on the following charge to the jury: "Our law further provides that a carrier must maintain its premises in a reasonably safe condition for the uses to which they are adapted, including the purposes of ingress and egress by its passengers, and a carrier is liable to one who is its passenger for injuries to such passenger occasioned by the carrier's failure to exercise ordinary care to so maintain its premises. Now, should you determine from the evidence in this case that there was more than one apparently safe route by which parties departing from airplanes might leave the landing field of the defendant carrier on foot, in the absence of notice from the airplane carrier to use a particular route, then such passenger would be at liberty to use any route which appeared to him as a reasonably

prudent person to be intended for such use by passengers, and as to him, the air line company, the defendant in this case, was bound to see that all such routes apparently intended for use and which appeared to the passenger to be reasonably safe for use, were in fact reasonably safe and sufficient. Whether the route selected by the passenger was or was not apparently safe to any person exercising ordinary care, is a question of fact for the jury: if the route selected by the passenger appeared to him to be reasonably safe and to be intended for use in leaving the premises and you find in fact it was not reasonably safe for such purpose, then the defendant would be liable for such damages as the plaintiff sustained as a proximate result thereof, if you find that the plaintiff exercised ordinary care. I charge you, gentlemen, further that this duty to so keep its premises safe for its passengers applies to defects or conditions which are in the nature of hidden dangers and the like, and which the passenger in the exercise of ordinary care would not observe and were not known to the passenger. A carrier is not an insurer of the safety of its passengers but it owes to its passengers only the duty of exercising ordinary care for their protection while on their premises and while the relationship of carrier and passenger exists, all as I have heretofore charged you."

This charge is contended to have been confusing and misleading to the jury, by imposing an absolute duty upon the defendant to maintain its premises in a safe condition and by confusing that rule with the true rule that the defendant must exercise ordinary care to keep its premises safe. It is also contended that the charge placed a more onerous duty upon the defendant with respect to maintaining its premises than is imposed by law, and that this absolute duty, as imposed by the charge, was not a duty imposed by penal statute so that its breach would amount to negligence per se, but was given such effect in the charge.

The charge did not impose an absolute duty upon the defendant, but rather a relative one, to keep its premises reasonably safe; that is, not absolutely free from risk or danger, but only reasonably so. To remove any doubt in the minds of the jury as to the degree of safety required, this charge makes it clear that the defendant should have maintained its premises

with ordinary care to protect its departing passengers from injury. In short, a reasonably prudent man, exercising ordinary care to protect invitees upon his premises from injury, would be said to keep his premises reasonably safe.

In *Atlanta Cotton-Seed Oil Mills* v. *Coffey*, 80 *Ga.* 145, 148 (4 S. E. 759), from which Code § 105-401 was derived, the following expression is used: "It was therefore incumbent on the defendant, according to the rule above stated [Code § 105-401, in substance], to see that the approach to the mill was reasonably safe for the persons whom he had invited to come thereto." Some other cases in which the duty to keep premises "reasonably safe" is treated as equivalent to the duty to use "ordinary care to keep one's premises safe" are as follows: *Coffer* v. *Bradshaw*, 46 *Ga. App.* 143, 148 (supra); *Rogers* v. *McKinley*, 48 *Ga. App.* 262, 266 (3, 4) (172 S. E. 662); *Lake* v. *Cameron*, 64 *Ga. App.* 501, 505 (13 S. E. 2d, 856); *Atlanta Terminal Co.* v. *Johnson*, 15 *Ga. App.* 22, 26 (82 S. E. 629).

It is further contended that the charge quoted was error because it instructed the jury to determine the apparent safety of the plaintiff's route from the airplane to his car in terms of the plaintiff's own reactions to the conditions of the route which he selected, rather than by the standard of the reactions of an ordinarily prudent man. However, the charge was sufficiently qualified in this respect by requiring that the route selected by the plaintiff must have appeared to him, in the exercise of ordinary care, to be safe. The charge complained of in the first special ground of the motion was not erroneous for any of the reasons assigned.

█ The second special ground assigns error on a portion of the charge to the effect that the plaintiff could not recover if his negligence was greater than the defendant's, and this charge is said to have been erroneous because it failed to state also that the plaintiff could not recover if his negligence was equal to the defendant's. This charge does not convey the impression that the plaintiff could recover if both parties were equally negligent, and it differs from the charge concerning apportionment of damages in *Brunswick & Western R.* v. *Wiggins*, 113 *Ga.* 842 (3), 848 (39 S. E. 551, 61 L.R.A. 613), cited and relied on by the movant. In *Wrightsville & Tennille R. Co.* v. *Gornto*, 129 *Ga.*

204 (8), 209 (58 S. E. 769), the *Wiggins* case was distinguished, and it was held that, in the absence of a written request, and in view of the charge being substantially in accordance with the provisions of the applicable Code sections, it was not error to fail to instruct the jury that if the parties were equally negligent there could be no recovery. Also see *Central of Ga. Ry. Co.* v. *Gill,* 136 *Ga.* 240 (2) (71 S. E. 166); *Southern Railway Co.* v. *Reed,* 40 *Ga. App.* 332 (3) (149 S. E. 582); *American Bakeries Co.* v. *Johnson,* 59 *Ga. App.* 150, 151 (6) (200 S. E. 485). There was no request to charge this principle in the present case, and the charge complained of was not erroneous because of such omission.

■ On the day the case was called for trial, the defendant amended its answer by adding thereto a plea, in which it was alleged: that the plaintiff at the time of his alleged injury had terminated travel from California to Macon, Georgia, which was in interstate commerce; that the ticket issued to the plaintiff had printed thereon, "Sold subject to tariff regulations," which regulations provide in substance that no action should be maintained for an injury to an airplane passenger on the lines upon which the plaintiff traveled unless written notice of claim should be presented to the carrier within thirty days after such injury, and which further provide that no action should be maintained for such injury unless instituted within one year from the date of the injury; and that the plaintiff gave no such written notice of claim until more than thirty days after the alleged date of his injury and filed his suit more than a year after such date.

On the trial of the case, the movant offered in evidence the ticket, upon which the plaintiff had traveled from Los Angeles, California, to Macon, Georgia, and a certified copy of the defendant's tariffs, as filed with the Civil Aeronautics Board and referred to by the ticket. The tariff regulation pertaining to notice of claim and time for bringing suit was in substance as alleged in the plea. The trial judge sustained the plaintiff's objections to this evidence and excluded it, and it is this ruling which the movant excepts to in the third special ground of its motion for a new trial, contending that this evidence was relevant to show that the plaintiff was barred from recovering judgment in the case by his failure to present his written notice of

claim within thirty days and to bring suit within one year from the date of his injury. While evidence of the plaintiff's illness was introduced to excuse his failure to present a written notice of claim within the time provided, it was not shown that any such written notice was given within that period. Also, the plaintiff's injuries were shown to have been sustained on September 23, 1947, and the suit was filed on November 18, 1948, more than a year later.

The objection to the evidence offered in support of the plea filed by the defendant on the day of the trial served to question the sufficiency of the plea as a defense. *Walden* v. *Walden*, 124 *Ga.* 145 (2) (52 S. E. 323); *Crew* v. *Hutcheson*, 115 *Ga.* 511 (42 S. E. 16); *Kelly* v. *Strouse*, 116 *Ga.* 872, 880 (43 S. E. 280); *Tucker* v. *Lea*, 83 *Ga. App.* 207, 214 (63 S. E. 2d, 252). If the plea was not good, the evidence in support thereof was properly excluded.

Whether or not the time limitations for giving notice of claim and for bringing suit, as set out in the excluded tariff regulation, became a part of the contract between the parties for carriage by air in interstate commerce, it does not appear that the plaintiff's action was one to which the conditions stated in the tariff regulation should be applied. The tariff in question provides, in part, that "No action shall be maintained for . . injury to or death of any passenger, or on any other claim arising out of the transportation of, or failure to transport, any passenger . . unless notice of the claim is presented," etc. It is alleged in the plea that the plaintiff's travel in interstate commerce had terminated at the time of his injury, and the facts as proved on the trial of the case also show that the plaintiff's injury did not arise out of his transportation by the defendant, and that the plaintiff was not a passenger of the defendant at the time he was injured. Under these circumstances, the limitations on the defendant's liability would not be applicable.

The governing principles of law concerning the termination of the relation of carrier and passenger have been laid down in cases involving carriers by rail, and these principles are also controlling in the present suit against a carrier by air, since both types of carrier operate upon fixed schedules and over fixed routes, and ordinarily discharge their passengers at a station or

terminal facility located at the passenger's destination. The relationship of carrier and passenger exists until the passenger's destination has been reached and the passenger has either alighted from the means of conveyance in safety or has been afforded reasonable time and opportunity to do so. *Central Railroad* v. *Whitehead*, 74 *Ga.* 441, 453; *Covington* v. *W. & A. R. Co.*, 81 *Ga.* 273 (6 S. E. 593); *Atlanta Consolidated St. Ry. Co.* v. *Bates*, 103 *Ga.* 333 (2), 347 (30 S. E. 41); *McBride* v. *Georgia Ry. &c. Co.*, 125 *Ga.* 515 (7) (54 S. E. 674); *Columbus Ry. Co.* v. *Asbell*, 133 *Ga.* 573 (66 S. E. 902); *Georgia & Fla. Ry.* v. *Thigpen*, 141 *Ga.* 90 (2b) (80 S. E. 626). The carrier's duty to exercise extraordinary diligence to protect the lives and persons of its passengers (Code, § 18-204) is coextensive with the relationship of passenger and carrier. As said in *Central R. & Bkg. Co.* v. *Perry*, 58 *Ga.* 461, 467, "The rule of extraordinary diligence applies only to the receiving, keeping, carrying and discharging of passengers." The carrier's duty of exercising ordinary care to furnish safe station facilities for those to be received or for those who have been discharged as passengers is not to be confused with the carrier's duty to use extraordinary care in receiving, transporting, and discharging its passengers. *Central of Georgia Ry. Co.* v. *Brown*, 141 *Ga.* 553, 555 (81 S. E. 857). As to the carrier's duty to exercise extraordinary care while a passenger is alighting or is being discharged, see *Southern Railway Co.* v. *Reeves*, 116 *Ga.* 743 (42 S. E. 1015); *Metts* v. *L. & N. R. Co.*, 52 *Ga. App.* 115 (2) (182 S. E. 531); and, as to the carrier's duty to use ordinary care to provide safe facilities at its stations, see *Wilkes* v. *W. & A. R. Co.*, 109 *Ga.* 794 (35 S. E. 165); *Georgia, Carolina &c. Ry. Co.* v. *Brown*, 120 *Ga.* 380, 381 (47 S. E. 942); *Atlanta Terminal Co.* v. *Johnson*, 15 *Ga. App.* 22 (82 S. E. 629); *Watts* v. *Colonial Stages Co.*, 45 *Ga. App.* 115 (163 S. E. 523). As indicated in the second division of this opinion, the latter duty is the obligation of any owner or occupier of land to one coming upon the premises by express or implied invitation. Code, § 105-401. This duty of the carrier to exercise ordinary care in keeping its premises safe exists not only with respect to those persons being received or who have been discharged as passengers, but also with respect to any member of the public entering such premises for the pur-

poses of doing business with the carrier, including even persons coming to meet arriving passengers. *Atlantic &c. Ry. Co. v. Owens,* 123 *Ga.* 393 (51 S. E. 404); *Southern Railway Co. v. Myrick,* 12 *Ga. App.* 241 (77 S. E. 3); *Norris v. Macon Terminal Co.,* 58 *Ga. App.* 313, 316 (198 S. E. 272). The conclusion of the matter is that the relationship of carrier and passenger terminates when the passenger has been safely discharged and when the carrier is no longer bound to exercise extraordinary care for his safety, but is bound to use only the same degree of care for his safety as it would for the safety of any other member of the public upon its premises by invitation, express or implied.

Another test for determining when the relationship ends is stated in *Georgia R. & Bkg. Co. v. Brooks,* 30 *Ga. App.* 692 (3) (119 S. E. 424): "A carrier of passengers, when discharging a passenger from its trains, is under a duty to exercise extraordinary care for his safety. This duty continues until the passenger has been conducted to a place where he has some *freedom of locomotion* and can in a measure look out for his own safety. Where a train stops some distance from the station, and the passengers are informed by the servants of the carrier that the train will go no further, and that all passengers should disembark at that point, and where a passenger disembarks and, on account of the physical surroundings, is, in making his egress from the train, confined to a narrow and limited space of ground, *with no choice or freedom of movement,* he will not be deemed to have been discharged as a passenger until he has traversed such limited and restricted space; and so long as he is *confined and restricted in his movements to such space as has been designated to him by the carrier as the only method of egress from the train,* the carrier is under a duty to exercise extraordinary care for his protection and safety." (Emphasis added.)

Applying the foregoing principles to the present case, it appears that Millirons was not a passenger at the time he was injured. He had alighted safely from the airplane and had passed through the passenger gate of the fence or barrier by the landing surface, at which point he met those of his family who had come to greet him and to protect him from the rain as they accompanied him to an automobile in the parking lot. At this

point, Millirons was free to go either to the defendant's office, to another building on the premises occupied by the Weather Bureau, the C.A.A., and another air line, or, as he did go, to the parking lot beside the defendant's office building where cars and taxicabs were waiting. Being no longer restricted to a designated route from the airplane on which he had been traveling, Millirons was not a passenger when he stumbled over the low wall between the parking lot and the waiting area of the field and thereby sustained his injuries.

The liability of the defendant does not arise out of a breach of the contract of transportation, of which the tariff regulation in question was a part, but is predicated upon a violation of the duty of one occupying and in control of land to exercise ordinary care in keeping the premises and approaches thereto in a safe condition for invitees thereon. The conditions of the defendant's liability for injuries arising out of the transportation of a passenger, as imposed by the tariff regulations, were not applicable under the facts of this case, and the trial judge did not err in excluding from evidence the plaintiff's ticket and the extract from the tariff regulations, as complained of in the third special ground.

The trial judge properly overruled the defendant's motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*