77610. CUTHBERT v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
(379 SE2d 413)

DEEN, Presiding Judge.

Jerome Cuthbert, as executor of the estate of his grandmother, Christine Cuthbert, brought a wrongful death action against MARTA. The plaintiff's deceased was a passenger who rang the bell in a MARTA bus to signal the driver that she wanted to exit the bus when the bus was at her stop. The driver stopped the bus approximately four feet from the curb and about twenty-five feet from the stop. Mrs. Cuthbert was walking along the side of the bus when she somehow fell under its rear wheel and was instantly killed.

1. Appellant first contends that under OCGA § 46-9-132, MARTA, as a common carrier, owed the duty of extraordinary diligence to his deceased. Extraordinary diligence is " 'that extreme care and caution which very prudent and thoughtful persons use' in and about similar matters." *East Tenn. &c. R. Co. v. Green*, 95 Ga. 736, 737) (22 SE 658) (1895).

The MARTA bus driver testified that the Operator Candidate Manual, which is issued by the company to its drivers, defines a perfect stop as one made one foot from the curb, and it requires the driver to check to the left, to the right, and to the front to see that all pedestrians are clear of the bus before starting forward. The driver admitted that nothing prevented him from pulling up one foot from the curb except that he knew that his passenger would have to walk further back to the bus stop. The driver further testified that he looked in the left side mirror, and when he looked in the right side mirror he saw her walking towards the rear of the bus about half-way down the side of the bus. He rechecked the left mirror, and as he

eased his foot off the brake and began to roll the bus off from the stop, he began to turn his head to check the right mirror when he felt a thump. Upon investigation, he discovered he had run over her. A passenger on the bus testified that the deceased stepped down onto the street when she exited the bus, the doors closed, and the bus began to roll off "real slow." The driver looked in the mirror, noticed that he did not see her, and asked where she went so fast. From this evidence a jury could find that the driver failed to look for her in his right mirror before he took his foot off the brake.

Whether the passenger was owed a duty of extraordinary care or ordinary care is also a jury question. "[T]he relationship of carrier and passenger terminates when the passenger has been safely discharged and when the carrier is no longer bound to exercise extraordinary care for his safety, but is bound to use only the same degree of care for his safety as it would for the safety of any other member of the public upon its premises by invitation, express or implied." *Delta Air Lines v. Millirons*, 87 Ga. App. 334, 342 (73 SE2d 598) (1952). The court in that case also cited another test for determining when the relationship ends: When the carrier is discharging a passenger from its trains, it is under a duty to exercise extraordinary care. "This duty continues until the passenger has been conducted to a place where he has some *freedom of locomotion* and can in a measure look out for his own safety." Id. We therefore find that the trial court erred in granting appellee's motion for a directed verdict, as it was for the jury to determine the duty owed to the plaintiff's decedent and whether the defendant exercised that duty.

2. Appellee claims that the decedent committed negligence per se and assumed the risk of injury when she violated OCGA § 40-6-97 (a), which makes it unlawful for a pedestrian to walk along an adjacent roadway where a sidewalk is provided. We find that the decedent's act did not serve as a bar to recovery, but merely raised a jury question as to her own negligence. She was let off the bus approximately four feet from the curb, and the back of the bus was about twelve to thirteen feet past the bus stop. This code section does not provide that where a person is on the road and injured because of the negligence of another, he is barred from recovery. Questions of negligence, diligence, comparative negligence, etc., are matters for the jury, and a court should not take the place of the jury in deciding them except in plain and indisputable cases. *Groover v. Dickey*, 173 Ga. App. 73 (325 SE2d 617) (1984).

*Judgment reversed. McMurray, P. J., Banke, P. J., Birdsong, Sognier, Pope, Benham and Beasley, JJ., concur. Carley, C. J., dissents.*

CARLEY, Chief Judge, dissenting.

The majority states the correct rule for determining whether appellant-plaintiff's deceased was, at the time of her death, a passenger to whom appellee-defendant owed a duty of extraordinary care. It is my opinion, however, that the application of that correct rule to the facts of this case mandates the contrary result from that reached by the majority. Under the undisputed evidence of record, appellant's deceased was not a passenger of appellee at the time of the incident resulting in her death. She was a pedestrian to whom appellee owed a duty of ordinary rather than extraordinary care and, since the evidence of record would not authorize a finding that the death of appellant's deceased was the proximate result of appellee's breach of this duty, I believe that the trial court correctly granted appellee's motion for a directed verdict. I, therefore, respectfully dissent from the majority's reversal of the trial court's ruling.

" 'A carrier of passengers, when discharging a passenger from its trains, is under a duty to exercise extraordinary care for his safety. This duty continues until the passenger has been conducted to a place where he has some *freedom of locomotion* and can in a measure look out for his own safety. Where a train stops some distance from the station, and the passengers are informed by the servants of the carrier that the train will go no further, and that all passengers should disembark at that point, and where a passenger disembarks and, on account of the physical surroundings, is, in making his egress from the train, confined to a narrow and limited space of ground, *with no choice or freedom of movement*, he will not be deemed to have been discharged as a passenger until he has traversed such limited and restricted space; and so long as he is *confined and restricted in his movements to such space as has been designated to him by the carrier as the only method of egress from the train*, the carrier is under a duty to exercise extraordinary care for his protection and safety.' " (Emphasis in original.) *Delta Air Lines v. Millirons*, 87 Ga. App. 334, 342 (5) (73 SE2d 598) (1952). When the foregoing principles are applied to the facts of the present case, it is clear that the status of appellant's deceased at the time of her death was that of pedestrian, and not that of passenger. She was not killed while attempting to alight from appellee's bus, but only after she had safely disembarked and had freely chosen her route of departure. There were no restrictions whatsoever placed on her movements after she stepped from the bus and she had an unfettered choice of stepping up onto the adjacent sidewalk or, as she chose to do, of remaining in the roadway. "Being no longer restricted to a designated route from the [bus] on which [she] had been traveling, [appellant's deceased] was not a passenger. . . ." *Delta Air Lines v. Millirons*, supra at 343 (5). "If [she] had, before [she] was injured, succeeded in getting a footing upon the

street which [she] could have maintained, [her] relation as passenger would then have ceased." *Augusta R. Co. v. Glover*, 92 Ga. 132, 148 (14) (18 SE 406) (1893). It is undisputed that appellant's deceased "had safely alighted from the [bus] which transported [her] . . . [She] then ceased to be a passenger. [Cit.]" *Columbus R. Co. v. Asbell*, 133 Ga. 573, 575 (66 SE 902) (1909). Accordingly, it is my opinion that the majority incorrectly holds that a jury question remained as to whether appellant's deceased was a passenger to whom appellee owed a duty of extraordinary care.

The decisive issue that I perceive to be presented for resolution is whether the evidence would authorize a finding of an actionable breach of the duty of ordinary care that appellee owed to appellant's deceased in her capacity as a pedestrian. It is undisputed that, after he stopped and allowed appellant's deceased to alight, the driver of appellee's bus did not act in total disregard of the safety of others. First, he used the left-hand mirror to determine if there was any vehicular traffic approaching from the rear. He then used the right-hand mirror to determine the position of appellant's deceased. He saw that she was walking at an arm's length distance along the side of the bus. He then once again used the left-hand mirror to check for approaching vehicular traffic. It is true that he did not then check the exact position of appellant's deceased a *second* time prior to removing his foot from the brake and beginning a slow roll away. However, the law does not require that a driver, having first determined that his vehicle can pass by an oncoming pedestrian with apparent safety, must thereafter keep a constant lookout so as to guard against the pedestrian's subsequent act of stepping or stumbling into the side of his vehicle. Cf. *Gray v. Jackson*, 53 Ga. App. 658 (187 SE 229) (1936). Compare *Hodges v. Haverty*, 115 Ga. App. 199 (154 SE2d 276) (1967); *Curry v. Durden*, 103 Ga. App. 371 (118 SE2d 871) (1961). Here, as in *Gray*, there is absolutely no evidence that it was the movement of the bus that caused appellant's deceased to deviate from her former path at an arm's length from the side of the bus and fall to her death under the wheels. Instead, the evidence would only authorize a finding that appellant's deceased "stumbled or lurched into the side of the [bus] and received the injuries which caused [her] death." *Gray v. Jackson*, supra at 660 (1). In the exercise of ordinary care, the law requires that a driver operate his vehicle so as to guard against striking a pedestrian. The law does not impose upon a driver the duty to exercise extraordinary care to prevent a pedestrian from making contact with the vehicle. If it were otherwise, a driver could never lawfully proceed past an oncoming pedestrian at an otherwise apparently safe distance, but would be required to keep his vehicle immobile until such time as the pedestrian had walked past. Drivers as well as pedestrians have the right to pursue their travel plans and pedestrians as well as driv-

ers must use ordinary care in the exercise of that right. The undisputed evidence of record shows that the driver of appellee's bus was in the exercise of ordinary care when he elected to remove his foot from the brake, notwithstanding his knowledge that he would be slowly rolling past a pedestrian whom he had previously seen to be walking at an arm's length from the side of the bus. The undisputed evidence of record also shows that the proximate cause of the death of appellant's deceased was apparently her own act of stepping or stumbling into the side of the bus. Accordingly, a directed verdict in favor of appellee was demanded and I respectfully dissent from the majority's reversal of the trial court's order.

DECIDED FEBRUARY 9, 1989 —
REHEARING DENIED MARCH 2, 1989 — 

*Henry B. Staley*, for appellant.
*Michael Fisher, Daniel P. Johnson*, for appellee.