A09A1484. FIELD v. LOWERY.
(686 SE2d 422)

BARNES, Judge.

Mark Field sued Mary Lowery for personal injuries he incurred when Lowery hit him with her car while he was walking down the road. Both parties moved for partial summary judgment, and the trial court granted Lowery's motion, holding that OCGA § 40-6-92 requires pedestrians to walk on the shoulder of the road when no sidewalk was available. The court further held that the area where Field had been walking was not the "shoulder" of the road, and that

---

he should have been walking on the other side of the road. For the reasons that follow, we reverse.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

1. Field contends the trial court erred in concluding that the "shoulder" of the road did not include the area where he had been walking. Field testified in his deposition that he had parked his tractor-trailer rig in a lot on Old Dixie Highway and crossed the street to a Waffle House to obtain better cell reception so he could speak to his dispatcher. His student driver accompanied him to eat a meal, and when the men were finished they began walking back toward the truck. Old Dixie Highway was four lanes wide at that location, with two lanes running in each direction, and it was 10:00 p.m. His student was in the middle of the road and Field had crossed the street and had been walking southbound in the direction of traffic, two feet outside the white fog line, for fifty or sixty feet, long enough for two cars to pass him. He testified that there was no curb in that location, only gravel shoulders on both sides of the road. Lowery's car crossed the white line and struck him from behind. Field tried to stand but fell over, then saw that his foot was "pointing in the opposite direction." Field suffered a broken leg and underwent three surgical procedures, including a bone graft.

Lowery worked at another Waffle House further down the road, and testified that she had worked from 11:00 p.m. the day before the incident to 7:00 a.m. the day of the incident, then had been required to remain at the restaurant until 2:00 that afternoon. She went home and slept until 7:00 or 8:00 p.m., then arose and began driving back to the restaurant at about 10:00 p.m. She testified that she never saw Field or his student and did not know if Field had crossed the road or was walking along the edge of the road. It was dark and she had been looking straight ahead. She stopped her car as soon as she heard the collision and walked back to see Field lying on the ground. She also testified there was no curb in that area.

A witness testified he had turned northbound onto Old Dixie Highway when he saw two men on the other side of the road. Field was walking between the raised curb and the white line at the end of the right lane in a "little walk path" that "looks like a sidewalk" and

the other man was walking in the grass. It was a clear evening and he had no trouble seeing the men. Two or three seconds after he first saw the men he saw Lowery's car hit Field, who flew into the air and fell in the same area where he was walking. The witness immediately pulled his pickup truck sideways into the southbound lane so no other cars would hit Field, and waited until the police and ambulance came.

An accident reconstruction expert testified for Lowery that in his opinion, Field had been crossing the road when hit, not walking between the white line and the raised curb. Based on pictures of Field's injury and the location where he landed, he thought Field had been striding forward, his right leg extending beyond Lowery's bumper, when Lowery's bumper struck Field's left leg and he was thrown into the area between the white line and the curb. The expert also testified that the part of the roadway between the white line and curb was part of the shoulder of the road, although he called it the curb and guttering area.

Finally, Field presented the affidavit of an engineer with the Georgia Department of Transportation (GDOT) Division of Preconstruction, which develops and implements roadway design. The engineer uses the GDOT Design Policy Manual, a general reference of design policies required for the preparation of GDOT roadway construction plans, which defines "shoulder" as "[t]he portion of the roadway contiguous with the traveled way for accommodation of stopped vehicles, for emergency use, and for lateral support of base and surface courses." It defines an "urban roadway" as one "classified functionally as an Urban Arterial, Urban Collector, or Urban Local Street that operates at speeds generally less than or equal to 45 mph and features curb and gutter." Finally, the manual defines "urban shoulder" as "[t]he part of an urban roadway beginning at the edge of travel and extending to the breakpoint of the fore slope or backslope that ties to the natural terrain." GDOT considers the white line on the right side of the road to be the edge of the traveled way, and an urban shoulder begins at the white line on the right side and includes the curb and gutter. According to the Manual of Uniform Traffic Control Devices, which the preconstruction engineer also uses as a design guide, the solid white line is used to define the edge of the traveled way, and the shoulder begins there. In the engineer's opinion, based on a photograph of Old Dixie Highway, the area between the solid white line and the raised curb met the "engineering definition of a shoulder of a roadway."

In granting Lowery's motion for partial summary judgment, the trial court noted that, under OCGA § 40-6-96, which defines the rights and duties of pedestrians on or along the roadway, "[p]edestrians are required to walk upon the shoulder of a roadway when

they are not involved in the act of crossing the road." The court then held that "the shoulder of a highway for purpose of pedestrian travel does not include that area of the highway to the outside of the fog line but to the inside of the paved gutter where there is abundant traversable ground contiguous to the highway upon which the pedestrian could walk." The court held further that "the shoulder consists of that area immediately adjacent to the highway upon which a pedestrian traveling in relation thereto might reasonably be expected to safely walk, and motor vehicles are not routinely allowed to be used."

Even Lowery's expert testified, however, that the part of the roadway between the white line and curb was part of the shoulder of the road. In his affidavit the GDOT preconstruction engineer said the area on Old Dixie Highway between the solid white line and the raised curb met the "engineering definition of a shoulder of a roadway." OCGA § 40-6-96

> does not provide that where a person is on the road and injured because of the negligence of another, he is barred from recovery. Questions of negligence, diligence, comparative negligence, etc., are matters for the jury, and a court should not take the place of the jury in deciding them except in plain and indisputable cases. [Cit.]

(Punctuation omitted.) *Cuthbert v. MARTA*, 190 Ga. App. 550, 551 (2) (379 SE2d 413) (1989) (Despite OCGA § 40-6-96 (b) (formerly OCGA § 40-6-97 (a)), making it unlawful for pedestrian to walk along adjacent roadway where sidewalk provided, decedent's act did not serve as a bar to recovery, but only raised jury question as to her own negligence.). Accordingly, reviewing the law and evidence de novo, the record does not establish that Lowery is entitled to partial summary judgment on this issue as a matter of law.

2. The trial court also erred in holding that OCGA § 40-6-96 (d) applies to four-lane roads. That subsection provides that if neither sidewalk nor shoulder is available, pedestrians on a two-lane road should walk on the left side of the roadway.

> In construing a statute, the determining factor is the intent of the legislature and we look first to the words of the statute to determine what that intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was. Indeed, where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden.

*Early v. Early*, 269 Ga. 415, 416 (499 SE2d 329) (1998). In this case, the statute plainly and unambiguously states that pedestrians on a two-lane road without sidewalk or shoulder should walk on the left side. All the evidence of record shows that this incident occurred on a four-lane road with a shoulder. Accordingly, the trial court erred in holding that the statutory instruction to walk on the left applies to these facts.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 6, 2009.

*Braun & Ree, Michael R. Braun,* for appellant.
*Temple, Strickland, Dinges & Schwartz, William D. Strickland,* for appellee.