**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0086. DEMOTT v. OLD TOWN TROLLEY TOURS OF SAVANNAH, INC.

Boggs, Judge.

Malissa DeMott filed a breach of contract action against Old Town Trolley Tours of Savannah, Inc. ("Old Town") contending that Old Town, as a common carrier, is liable for injuries she sustained when she fell in its parking lot. Old Town moved for summary judgment on the claim, the trial court granted the motion, and DeMott now appeals. For the following reasons, we affirm.

"On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and

punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010); see OCGA § 9-11-56 (c).

So viewed, the evidence showed that on November 17, 2008, DeMott, her husband, mother-in-law, and a family friend arrived at the Savannah Visitor Center parking lot for the purpose of taking Old Town's trolley tour of the City of Savannah. DeMott entered the visitor center, purchased tickets for the trolley tour, and then walked across the parking lot to a kiosk to inquire about where to board the trolley. DeMott was told that she should board the trolley at the front door of the visitor center where she had just purchased the tickets. Because she had to walk back across the parking lot, DeMott's husband warned her to "watch the pot holes.[sic]" En route back to the visitor center, DeMott tried to step around a pothole, but the asphalt under her foot gave way, and she fell.

On March 16, 2010, DeMott filed a premises liability action against the City of Savannah, but later determined that the parking lot where she fell was owned by Old Town. On November 16, 2011, three years following her injury, DeMott amended her complaint to allege a premises liability claim against Old Town.[1] When Old Town moved for summary judgment on DeMott's claim because the two-year

---

[1]The City of Savannah was dismissed from the action.

statute of limitation had expired, see OCGA § 9-3-33, DeMott, on July 10, 2012, again amended her complaint in order to allege a breach of contract claim against Old Town as a common carrier. She alleged that Old Town, as a common carrier, owed her an extraordinary duty of care, and that because Old Town allowed its parking lot to remain in a hazardous condition, it "was negligent and/or breached its contract" with her.

On July 12, 2012, the trial court entered a consent order granting summary judgment to Old Town on DeMott's premises liability claim, but also ordering that her "claims arising from a breach of contract remain viable and pending before the Court." Old Town then moved for summary judgment on DeMott's breach of contract claim arguing that it was in essence a claim for personal injury that was barred by the two-year statute of limitation. The trial court granted Old Town's motion for summary judgment, ruling that DeMott "was not injured due to any breach of any contractual duty to safely carry or transport her. Her action is a premises liability tort claim for personal injury based upon the condition of the parking lot."[2]

---

[2]The record reveals that during the pendency of this litigation, the parties entered into settlement negotiations. Old Town asserted that the parties had agreed to settle all claims arising out of DeMott's fall for $4,500, but DeMott refused to sign the agreement. DeMott claimed that the parties only agreed to "settle the case under Mr. DeMott's potential loss of consortium claim," but that the agreement "was never

In four enumerations, DeMott argues that the trial court erred in granting Old Town summary judgment on her breach of contract claim. She contends that the trial court did not apply the proper standard for a common carrier, and that it improperly relied upon two cases.[3] We hold that the trial court's grant of summary judgment to Old Town was proper.

"Georgia has long recognized that a ticket holder has a right of action for the breach of a contract of carriage." *Crites v. Delta Airlines*, 177 Ga. App. 723, 725 (3) (341 SE2d 264) (1986). DeMott's breach of contract claim is premised upon OCGA § 46-9-132, which provides that "[a] carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence." And "[t]he rule of extraordinary diligence applies only to the *receiving, keeping, carrying and discharging* of passengers." (Citation and punctuation omitted; emphasis supplied.) *Delta Air Lines*

---

consummated." Old Town filed a motion to enforce the purported settlement agreement, but following a hearing the trial court ruled that "there was no mutual agreement as to the claims to be settled."

[3]DeMott also asserts that the court's ruling was in conflict with the consent order. But this was not a ruling on the merits of the breach of contract claim. The court simply acknowledged that the claim remained pending following its grant of summary judgment to Old Town on the premises liability claim.

*v. Millirons*, 87 Ga. App. 334, 341 (5) (73 SE2d 598) (1952). "This duty continues until the passenger has been conducted to a place where he has some *freedom of locomotion* and can in a measure look out for his own safety," (emphasis in original.) id. at 342 (5), and is "coextensive with the relationship of passenger and carrier." Id. at 341 (5); see also *Cuthbert v. MARTA*, 190 Ga. App. 550, 551 (1) (379 SE2d 413) (1989).

We have held that "[t]he relationship of carrier and passenger exists until the passenger's destination has been reached and the passenger has either alighted from the means of conveyance in safety or has been afforded reasonable time and opportunity to do so." *Millirons*, supra, 87 Ga. App. at 341 (5). And with regard to when the carrier-passenger relationship commences, as explained in *Millirons*, it begins when the carrier is receiving the passenger. See id. In the circumstance of a railroad passenger, for example, this Court held that "it can not be doubted that when a person is on the steps or platform of the car which is open for the reception of passengers, in the act of entering for the purpose of becoming a passenger, this relation exists." *Georgia R. & E. Co. v. Cole*, 1 Ga. App. 33, 34 (57 SE 1026) (1907).

When DeMott fell, she was not aboard the trolley, and was not in the act of boarding or exiting the trolley, i.e., she was not being received, kept, carried, or

5

discharged by Old Town. As DeMott states in the opening of her brief, she was en route to the location where she was to board the trolley and was still traversing the parking lot when she fell. Under these circumstances, no carrier-passenger relationship existed for OCGA § 46-9-132 to apply. Compare *Southeastern Stages v. Stringer*, 263 Ga. 641 (437 SE2d 315) (1993) (plaintiff passenger was killed by another passenger while on board bus); *Sutton v. Southern R. Co.*, 101 Ga. 776 (20 SE53) (1897) (plaintiff boarded train but was later forcibly removed from train by conductor); *Crites v. Delta Air Lines*, 177 Ga. App. 723, 725 (3) (341 SE2d 264) (1986) (plaintiff passenger was removed from plane, harassed, and detained); *Cole*, supra (plaintiff was injured while on the steps of front platform entering trolley car). DeMott's breach of contract claim therefore fails.

It is undisputed that DeMott fell on Old Town's premises. "The carrier's duty of exercising ordinary care to furnish safe station facilities for those to be received or for those who have been discharged as passengers is not to be confused with the carrier's duty to use extraordinary care in receiving, transporting, and discharging its passengers." *Millirons*, supra, 87 Ga. App. at 341 (5). The duty of ordinary care

> is the obligation of any owner or occupier of land to one coming upon
> the premises by express or implied invitation. This duty of the carrier to

6

exercise ordinary care in keeping its premises safe exists not only with respect to those persons being received or who have been discharged as passengers, but also with respect to any member of the public entering such premises for the purposes of doing business with the carrier, including even persons coming to meet arriving passengers.

Id.; see also *Central of Georgia R. Co. v. Brown*, 141 Ga. 553, 555 (81 SE2d 857) (1914) ("A railroad company is bound to use ordinary care in providing stational facilities for receiving and discharging passengers."); *Watts v. Colonial Stages Co.*, 45 Ga. App. 115, 119 (163 SE2d 523) (1932) (defendant bound to exercise only ordinary care and not extraordinary care where passenger was injured after he exited bus, entered a building, and fell on concrete).

Thus, any liability on the part of Old Town "does not arise out of a breach of the contract of transportation, . . . but is predicated upon a violation of the duty of one occupying and in control of land to exercise ordinary care in keeping the premises and approaches thereto in a safe condition for invitees thereon." *Millirons*, supra, 87 Ga. App. at 343 (5). Such a duty is that which arises in any premises liability action. As the trial court properly concluded in the consent order, however, DeMott's premises liability claim for her injury is barred by the two-year statute of limitation. See OCGA § 9-3-33 (two-year statute of limitation for personal injury actions).

7

Because DeMott cannot sustain a breach of contract claim under OCGA § 46-9-132, and as the trial court previously ruled, her premises liability claim is barred by the statute of limitation, the court did not err in granting Old Town's motion for summary judgment.

*Judgment affirmed. Doyle, P. J., Dillard and Branch, JJ., concur. Barnes, P. J., Ellington, P. J., and Miller, J., dissent.*

A14A0086. DEMOTT v. OLD TOWN TROLLEY TOURS OF

    SAVANNAH, INC.


BARNES, Presiding Judge, dissenting.

Because a contract of carriage existed between Demott and Old Town Trolley, and a question of fact remains as to whether the common carrier's extraordinary duty of care applied when Demott fell on her way to board the trolley, the trial court erred in concluding that the applicable statute of limitation had expired. Thus, I respectfully dissent from the majority opinion.

Demott filed this action against Old Town Trolley more than two years but less than four years after she fell. The trial court found that Demott's claim was actually one for personal injury that was barred by the two-year statute of limitation in OCGA § 9-3-33. Quoting *Daniel v. American Optical Corp.*, 251 Ga. 166, 168 (1) (304 SE2d 383) (1983), the trial court held that "the scope of application of this statute of limitations is determined by the nature of the injury sustained rather than the legal theory underlying the claim for relief." The court concluded that Demott's injury did

not arise out of any breach of Old Town's contractual duty to safely transport her but was a premises liability claim for personal injury based on the condition of the parking lot.

Under OCGA § 46-9-132, "[a] carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence." "Georgia has long recognized that a ticket holder has a right of action for the breach of a contract of carriage." *Crites v. Delta Air Lines*, 177 Ga. App. 723, 725 (3) (341 SE2d 264) (1986). In fact,

> [when] a person makes a contract [to be transported to another location] with a common carrier, and he is injured by the negligence of the carrier, he has two remedies, one an action for the breach of contract, the other an action on the case for the wrong, and he may elect which remedy he will pursue. If he elects to bring an action for the breach of contract, he has, under the code, four years within which to bring it; if he elects to sue upon the tort, he has two years.

*Patterson v. Augusta & S.R.R.*, 94 Ga. 140, 141 (21 SE 283) (1894); OCGA § 9-3-26. Accord *Aiken v. Southern Railway*, 118 Ga. 118, 120 (44 SE 828) (1903); *Sutton v. Southern Railway*, 101 Ga. 776, 778 (29 SE 53) (1897).

2

Old Town does not dispute that Demott purchased a ticket for a trolley tour. Demott's ticket, while not a contract itself, "is evidence of the right to transportation furnished to the passenger in consequence of a contract to carry, and is intended to enable the passenger to secure transportation, under the rules and regulations of the carrier in performance of such contract." *Aiken*, 118 Ga. at 120. Here, the parties do not dispute that a contract of carriage existed between Demott and Old Town Trolley. The majority concludes that Old Town's duty of extraordinary care did not yet apply to Demott because she was simply crossing the parking lot, rather than actually boarding the trolley. But the record is unclear as to where Demott fell in relation to where she was supposed to board the trolley, and this lurking question of fact should be decided by a jury.

A common carrier's duty of extraordinary care clearly applies while the passenger is boarding or exiting the conveyance and during the trip itself. The difficulty arises in determining the carrier's duty during the time period after the passenger buys a ticket and before she boards the conveyance, or after the passenger exits the conveyance. We have held that the carrier's extraordinary duty ends when a passenger is "safely discharged," and that a jury question existed as to whether the duty continued and was exercised by a bus driver who ran over a passenger who had

3

just exited the bus. *Cuthbert v. MARTA*, 190 Ga. App. 550, 551 (1) (379 SE2d 413) (1989).

As to when the duty begins, our Supreme Court has held that a ticketed passenger waiting at the point of departure is, "as to all duties of the company towards [her] directly involving [her] safety, entitled to extraordinary diligence, and as to all duties involving merely [her] convenience or accommodation, to ordinary diligence." *Central R.R. & Banking Co. v. Perry*, 58 Ga. 461, at 467 (1877) (carrier owed only ordinary diligence to passenger who failed to board at the station and was injured while chasing the train down the tracks). Further, the carrier must exercise extraordinary diligence when "receiving" passengers, as in the case of a plaintiff who had purchased a railroad ticket and was "going forward at the proper place and time to board the defendant's east-bound train" when he was struck by another train. *Seaboard Air-Line R. Co. v. Brewton*, 23 Ga. App. 621, 622 (99 SE 226) (1919), reversed on other grounds, *Seaboard Air-Line R. Co. v. Brewton*, 150 Ga. 37 (102 SE 439) (1920). See also *Robertson v. MARTA*, 199 Ga. App. 681, 682 (405 SE2d 745) (1991) (common carrier has duty to exercise extraordinary diligence to protect fare-paying passengers in its station).

4

Here, the record establishes that an Old Town employee directed Demott to some area "over by the front door" where she was supposed to board the trolley, but the only evidence regarding the property's physical layout is a sketch Demott made during her deposition, which defense counsel noted was obviously not drawn to scale. That sketch does not indicate where Demott was supposed to board. The photographs in evidence show only large potholes in asphalt with no clues regarding their relationship to anything else. When defense counsel asked Mr. Demott, "So you just don't remember as we sit here today . . . where the hole was in terms of the relationship to the Visitors Center?" he responded, "I can say it was out in front of the — this is the — I could say this is where the bus, the tour buses would come, and somewhere in there, there were pot holes."

Construing the evidence in Demott's favor, as we must, whether the trolley company's extraordinary duty to Demott had begun before she fell is a question of fact for a jury rather than a question of law for the court.

> The duty of extraordinary diligence for the safety of passengers, which rests upon a carrier in behalf of a passenger who has purchased a ticket and is seeking to enter the train for the purpose of being transported to his destination, and whether extraordinary diligence requires that a passenger be assisted in entering a train, may be dependent upon the

5

circumstances and conditions surrounding the . . . facts of the particular case.

*Southern Ry. Co. v. Crabb*, 10 Ga. App. 559 (73 SE 859) (1912). See also *Payne v. Allen*, 155 Ga. 54, 55 (116 SE 640) (1923) (no statute defines "passenger," and existence of contractual passenger-carrier relationship depends on facts); *McBride v. Ga. R. & Elec. Co.*, 125 Ga. 515, 519 (54 SE 674) (1906) ("[T]he language employed in the decisions cited [regarding common carrier duties] varies somewhat. But what is said in reference to a case must be considered in the light of the facts of that case."); *Cuthbert,* 190 Ga. App. at 551 (1) (whether duty existed and was exercised was jury question).

A contract of carriage existed between Demott and Old Town Trolley. Because a question of fact remains regarding whether Old Town's duty under that contract applied when Demott fell, the trial court erred in granting summary judgment to Old Town on statute of limitation grounds. Therefore, I respectfully dissent to the majority opinion.

I am authorized to state that Presiding Judge Ellington and Judge Miller join in this dissent.

6